IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GALLAGHER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-3840 |
| ROBERT GREEN, ET AL. | : | |

**SURRICK, J.**                                        **OCTOBER 2 , 2014**

<u>**MEMORANDUM**</u>

Presently before the Court is the Parx Defendants' Motion to Dismiss Plaintiff's Second

Amended Complaint (ECF No. 22), and the Commonwealth Defendants' Partial Motion to

Dismiss Second Amended Complaint (ECF No. 23).  For the following reasons, the

Commonwealth Defendants' Motion will be granted, and the Parx Defendants' Motion will be

granted in part and denied in part.

**I.    BACKGROUND**

**A.    Factual Background[1]**

Plaintiff John Gallagher brings this Section 1983 action against Defendants associated

with Parx Casino and Racing ("Parx Casino"), located in Bensalem, Pennsylvania[2] and

---

[1] When considering a Rule 12(b) motion to dismiss, we must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

[2] The Parx Defendants include:  Robert Green ("Green"); William Hogwood ("Hogwood"); Bensalem Racing Association, Inc. ("Bensalem"); Keystone Turf Club, Inc. ("Keystone"); Greenwood Gaming and Entertainment, Inc. ("Greenwood Gaming"); Greenwood Racing Inc. ("Greenwood Racing"); Security Manager Baxter ("Baxter"); Director Norcutt ("Norcutt"); and John Doe (collectively, the "Parx Defendants").  (Compl. ¶¶ 2-12.)  Green and Hogwood are alleged to be owners of Parx Casino.  Baxter, Norcutt, and Doe are all alleged to be employees of Parx Casino.

Defendants associated with the Pennsylvania State Police.  (Sec. Am. Compl. ("Compl.") ¶¶ 2-15, ECF No. 21.)[3]

Plaintiff's Second Amended Complaint alleges that on September 27, 2010, Plaintiff was playing blackjack at Parx Casino.  (Compl. ¶ 19.)   While playing blackjack, Plaintiff used a strategy referred to as "card counting."  (*Id*. at ¶ 21.)  Card counting is a method used by players to "utilize[] information gained by the cards that had been played in order to increase the player's betting odds."  (*Id*.)[4]  Plaintiff alleges that the strategy of card counting is legal in Pennsylvania and is not considered cheating.  (Compl. ¶¶ 22-23.)  Plaintiff also alleges that the use of a memory aid tool to supplement a player's memory of the cards played, such as pencil and paper or a calculator, is also not considered cheating.  (*Id*. at ¶ 24.)

At approximately 12:01 p.m. on September 27th, one or more of Defendants Armstrong, Baxter, Norcutt, Burnett, and Doe, approached Plaintiff while he was playing blackjack and instructed him to come to the back office of the casino.  (*Id*. at ¶ 25.)[5]  Plaintiff was then asked to empty his pockets.  (Compl. ¶ 26.)  When he did, his pocket contained a memory or card-

---

[3] The Commonwealth Defendants include:  Corporal Brenda Armstrong ("Armstrong"); Trooper William Burnett ("Burnett"); and Commissioner Frank Pawlowski ("Pawlowski") (collectively, the "Commonwealth Defendants").  (Compl. ¶¶ 13-17.)  Armstrong and Burnett are alleged to be employed by the Pennsylvania State Police as state troopers working out of trooper headquarters located in Parx Casino.  Pawlowski was at all relevant times the Commissioner of the Pennsylvania State Police.  (*Id*.)  All Commonwealth Defendants are being sued by Plaintiff in their official and individual capacities.  (*Id*.)

[4] Plaintiff explains that "card counting is a strategy whereby—by knowledge of cards and number of cards that have been played and openly displayed (generally called "low cards" and "face cards"), there sometimes comes a time—usually near the end of a deck or group of decks—where the odds that would generally favor the casino may now favor the player, allowing the player to place his bets with odds that are now slightly in the player's favor."  (Pl.'s Commw. Resp. 4, ECF No. 25.)

[5] We presume that Plaintiff does not know exactly which Defendants were involved in escorting him to the Parx Casino back office.

counting tool. (*Id.*) Plaintiff was then taken to the State Police Office located within Parx Casino, had his ankle handcuffed to a bench, and was questioned by Defendants. (*Id.* at ¶ 27.) Aided by Armstrong, and/or Baxter, and/or Norcutt, and/or John Doe, Trooper Burnett took Plaintiff to the employee bathroom and was told to strip naked, stand still, and be quiet or else "his head was going through the wall." (*Id.* at ¶ 28.) Trooper Burnett then ordered Plaintiff to bend over. (*Id.* at ¶ 29.) Burnett then physically spread Plaintiff's buttock cheeks in order to perform a strip search and cavity search on Plaintiff. (*Id.*) During the strip search, a Parx Casino security guard held the door open to the employees' bathroom, which allowed Parx employees walking by to view Plaintiff naked and being searched. (*Id.* at ¶ 30) Plaintiff then put his clothing back on, was again handcuffed to the bench, and was told he was going to be "locked up." (*Id.* at ¶ 31.) Plaintiff was subsequently released from the Parx Casino premises. (*Id.*)

Plaintiff was later charged with Possession of a Cheating or Thieving Device, Criminal Attempt, and Theft by Deception. (*Id.* at ¶ 32.) Plaintiff was placed in an Accelerated Rehabilitative Disposition ("ARD") program, which resulted in his criminal record being expunged. (*Id.* at ¶ 85.)

At the time of the incident, Plaintiff was a Philadelphia Police Officer. (*Id.* at ¶ 43.) Plaintiff alleges that Defendants caused several television news broadcasts and print media to be published, which identified Plaintiff by name, and accused him of cheating at blackjack. (*Id.* at ¶ 44.) As a result of the incident, Plaintiff was required to resign from the Philadelphia police force, which resulted in the loss of his income, health benefits, and future participation in PPD's retirement program. (*Id.* at ¶ 56.) Plaintiff alleges that in addition to this financial harm, he suffered emotional and psychological damages and damage to his name and reputation. (*Id.* at ¶¶ 58-59.)

Plaintiff alleges that the Commonwealth Defendants and the Parx Defendants participated in an overarching conspiracy whereby they agreed that the State Police would set up headquarters at the Parx Casino, and provide services to the Parx Casino in exchange for payment.  (*Id*. at ¶ 33.)  In accordance with this agreement—either tacit or direct—the State police would also assist the Parx Casino by using its "authority to deal with patrons engaged in legal activities, which affected Parx Casino's profit margin, including . . . card counting."  (*Id*. at ¶ 34.)  As part of this conspiracy, the Parx Casino employees and the state troopers allegedly had a meeting during which "they discussed various aspects of how to deal with Plaintiff, including the decision to strip search him and to eventually bring charges against him."  (*Id*. at ¶ 38.) Plaintiff also alleges that the Defendants engaged in a "joint venture," whereby Defendants assisted one another in their joint actions and "lent their physical presence and support."  (*Id*. at ¶ 46.)  Plaintiff avers that Defendants' actions—detaining Plaintiff, strip searching him, and then causing defamatory publications about the incident—were not done for the purpose of properly prosecuting Plaintiff for a legitimate crime, but rather for the purpose of "protecting Defendants' financial interests by deterring future use of the strategy of card counting by other potential customers/players."  (*Id*. at ¶ 45.)

**B.     Procedural History**

The Second Amended Complaint was filed on September 14, 2012, and asserts the following causes of action:  civil rights violations under 42 U.S.C. § 1983 against all Defendants, except for Commissioner Pawlowski (Count I);[6] civil rights violations under 42 U.S.C. § 1983 against Pawlowski (Count II); assault and battery against all Defendants except

---

[6] The civil rights violations alleged in Count I include claims for false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process, in violation of the First, Fourth, and Fourteenth Amendments.  (Compl. ¶ 61.)

Pawlowski (Count III); illegal search against all Defendants except Pawlowski (Count IV); false

arrest/false imprisonment against all Defendants except Pawlowski (Count V); malicious

prosecution against all Defendants except Pawlowski (Count VI); and punitive damages against

all Defendants except Pawlowski (Count VII).  (Compl.)[7]

On September 22, 2012, the Parx Casino Defendants filed a Motion to Dismiss the

Second Amended Complaint.  (Parx Mot.; Parx Mem., ECF No. 22.)  On October 5, 2012, the

Commonwealth Defendants filed a Partial Motion to Dismiss Plaintiff's Second Amended

Complaint.  (Commw. Mot.; Commw. Mem., ECF No. 23.)  On October 8, 2012, Plaintiff filed a

Response to Parx Casino Defendants' Motion to Dismiss.  (Pl.'s Parx Resp., ECF No. 24.)  On

October 16, 2012, Plaintiff filed a Response to the Commonwealth Defendants' Motion to

Dismiss.  (Pl.'s Commw. Resp.)  On October 18, 2012, the Parx Casino Defendants filed a

Supplemental Memorandum of Law in Support of its Motion to Dismiss.  (Parx Supp. Mem.,

ECF No. 26.)  On October 25, 2012, Plaintiff filed a Reply to the Parx Casino Defendants'

Supplemental Memorandum of Law.  (Pl.'s Reply, ECF No. 27.)

## II.     LEGAL STANDARD

Under Federal Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for

failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion

under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading

requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient

---

[7] Plaintiff's initial complaint was filed on July 9, 2012 (ECF No. 1), and his first
amended complaint was filed on August 8, 2012 (ECF No. 12).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

III.     DISCUSSION

A.      Commonwealth Defendants' Motion

The Commonwealth Defendants seek dismissal of the following claims:  all civil rights claims asserted against them in their official capacity (Counts I and II); the Section 1983 claim asserted against Pawlowski in his individual capacity (Count II); all claims asserted against them under the First and Fourteenth Amendments (Counts I and II); and all state law claims, including assault and battery (Count III), illegal search (Count IV), false arrest and imprisonment (Count V), and malicious prosecution (Count VI).  Plaintiff concedes dismissal of the civil rights claims asserted against the Commonwealth Defendants in their official capacity, the First Amendment claims, and the Fourteenth Amendment claims.  We will address the remaining arguments raised by the Commonwealth Defendants.

1.      *Section 1983 Against Pawlowski (Count 2)*

In Count II of the Second Amended Complaint, Plaintiff alleges that Pawlowski "was deliberately indifferent to the need for, or had a policy, practice, and/or failed to provide an adequate system of supervision and guidelines with regard to" strip searches and body cavity searches, as well as the arrest, detention, charging and prosecution of citizens.  (Pl.'s Compl. ¶¶ 68-69.)[8]  Pawlowski was the Commissioner of the Pennsylvania State Police at the time of the incident.  He was brought into this lawsuit as a result of his role as the supervisor of the other Commonwealth Defendants, state troopers Armstrong and Burnett.

In the Third Circuit, there are two theories of supervisory liability:

one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's

_____

[8] Plaintiff consents to the dismissal of the Section 1983 claim asserted in Count II against Pawlowski in his official capacity.

rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (internal quotation marks omitted).[9]

Plaintiff's claim against Pawlowski falls under the first theory, which requires proof that Pawlowski established and maintained a policy, practice, or custom which directly caused Plaintiff's constitutional harm.[10]  Since the respondeat superior theory of liability does not apply in Section 1983 claims, under either theory of supervisory liability, the plaintiff must allege facts showing that the supervisor had personal involvement in the alleged constitutional harm.  *See Iqbal*, 556 U.S. at 767 (noting that, because vicarious liability is inapplicable to Section 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.") (internal quotation marks and citations omitted); *Davis v.*

---

[9] In *Santiago*, the Third Circuit also observed the "uncertainty" of the test for supervisory liability in light of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Santiago*, 629 F.3d at 130 n.8 (contemplating without deciding whether *Iqbal* narrows the scope of supervisory liability).  To date, the Third Circuit has not expressed an opinion as to whether the test for supervisor liability is altered in light of *Iqbal*.  As a result, district courts within the Third Circuit have continued to apply the standard as articulated by the Court in *Santiago*. *See, e.g.*, *Cordial v. Atlantic City*, No. 11-1457, 2014 U.S. Dist. LEXIS 74567, at *10-11 (D.N.J. June 2, 2014); *Campbell v. Gibb*, No. 10-6584, 2012 U.S. Dist. LEXIS 23363, at *31 (D.N.J. Feb. 21, 2012); *Price v. Roberts*, No. 10-1574, 2011 U.S. Dist. LEXIS 52151, at *39-40 (W.D. Pa. May 16, 2011).

[10] Supervision "entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking."  *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989).

*Danberg*, No. 11-265, 2012 U.S. Dist. LEXIS 2167, at *9 (D. Del. Jan. 8, 2012) ("[U]nder a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional rights.").

Personal involvement can be established with facts showing that the defendant personally directed or actually participated in the misconduct, or with facts showing that the defendant had knowledge of and acquiescence in the misconduct. *Brito v. United States DOJ*, 392 F. App'x 11, 14 (3d Cir. 2010) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Plaintiff alleges that Pawlowski was deliberately indifferent when he failed to provide an adequate system of supervision and guidelines with regard to strip searches and/or body cavity searches, as well as the arrest, detention, charging and prosecution of citizens.  (Pl's Compl. ¶¶ 68-69.)  The Complaint alleges no facts showing that Pawlowski was in any way involved in the detention and search of Plaintiff.  The Complaint also does not allege any facts showing that Pawlowski directed the state troopers or any of the Parx Defendants to detain or search Plaintiff. Moreover, there are no facts alleged showing that Pawlowski had any knowledge that casino patrons would be treated in the manner that Plaintiff was treated.  Plaintiff's allegations are merely conclusory, and as such, they fall short of stating a Section 1983 claim against Pawlowski.  *See Brito*, 392 F. App'x at 14 (affirming dismissal of Section 1983 claims against U.S. Attorney and Director of Bureau of Prisons because the plaintiff failed to allege that either had personal involvement or knowledge of the plaintiff's alleged constitutional harm); *Zatuchni v. Richman*, No. 07-4600, 2008 U.S. Dist. LEXIS 61574, at *14-16 (E.D. Pa. Aug. 12, 2008) (dismissing Section 1983 supervisory claims because no facts were alleged showing supervisor's personal involvement in causing plaintiff's harm).

9

Even characterized as a failure-to-train claim, Plaintiff's allegations are not sufficient. They do not show any personal involvement on the part of Pawlowski.  *See Bangura v. City of Phila.*, 338 F. App'x 261, 265 (3d Cir. 2009) ("In order to state a claim against Commissioner Johnson under § 1983, [the plaintiff] was required to allege facts demonstrating that the Commissioner had personal involvement in the allegedly deficient training."); *Price*, 2011 U.S. Dist. LEXIS 52151, at *40-41 (dismissing the plaintiff's failure to train claim against the police commissioner because the complaint lacked allegations that "Commissioner Pawlowski had advance knowledge of or involvement in the violations allegedly committed by [the police troopers]").  Plaintiff merely alleges legal conclusions, which without any factual support, are insufficient to maintain a Section 1983 claim against Pawlowski.  Count II will be dismissed as to Pawlowski.

      2.     *State Law Claims*

Plaintiff asserts claims under Pennsylvania law against the Commonwealth Defendants for assault and battery (Count III), illegal search (Count IV), false arrest/false imprisonment (Count V), and malicious prosecution (Count VI).  The Commonwealth Defendants seek dismissal of these claims, arguing that they are barred by sovereign immunity.

Under the doctrine of sovereign immunity, the Commonwealth and its officials and employees, acting within the scope of their duties, are immune from suit unless the immunity is specifically waived by the General Assembly.  1 Pa. Con. Stat. § 2310.[11]  The General Assembly

---

[11] Section 2310 states, in relevant part that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Con. Stat. § 2310.

has waived sovereign immunity in nine categories of actions.  *See* 42 Pa. Stat. Ann. § 8522(b).[12]

Intentional torts and civil rights actions are not within the narrow exceptions set forth by the

statute.  *See id.*; *see also Faust v. Com., Dep't of Revenue*, 592 A.2d 835, 839-840 (Pa. Commw.

Ct. 1991).  Therefore, employees of the Commonwealth are immune from intentional tort and

civil rights actions.  *See Price*, 2011 U.S. Dist. LEXIS 52151, at *42 (dismissing malicious

prosecution and false imprisonment claims as barred by sovereign immunity).  The state law

claims asserted by Plaintiff against the Commonwealth Defendants are all intentional torts and

therefore do not fall within the enumerated exceptions to sovereign immunity.  Plaintiff does not

dispute this.  (*See* Pl.'s Commw. Resp. 13.)  Rather, Plaintiff argues that the doctrine of

sovereign immunity does not apply because the Commonwealth Defendants were not acting

within the scope of their employment.  (*See id.*)

      Plaintiff is correct that the doctrine of sovereign immunity does not apply when the

Commonwealth employee acts outside the scope of his or her employment.  *See La Frankie v.

Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).  However, Plaintiff's argument that the

Commonwealth Defendants were not acting within the scope of their employment is belied by

the allegations in his Complaint.  Specifically, Plaintiff asserts that "[a]t all times relevant hereto,

defendants—Corporal Armstrong, Trooper Burnett and Commissioner Pawlowski—were

employees, workmen, servants, and/or agents of the Pennsylvania State Police and were working

within the course and scope of their employment and authority."  (Compl. ¶ 17.)  In the face of

these allegations, Plaintiff cannot now maintain that sovereign immunity does not apply to his

state law claims.  Indeed, even in the case relied on by Plaintiff, *La Frankie*, the court

---

[12] These categories include:  vehicle liability; medical-professional liability; care, custody and control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines.  42 Pa. Stat. Ann. § 8522(b).

determined that sovereign immunity barred state law claims because the plaintiff admitted in his complaint that the Commonwealth employee acted within the scope of his employment. *La Frankie*, 618 A.2d at 1149. Accordingly, Plaintiff's state law claims against the Commonwealth Defendants are barred by the doctrine of sovereign immunity and will be dismissed.

**B.      Parx Defendants' Motion**

The Parx Defendants seek dismissal of the following Counts:  Count I (civil rights violations); Count III (assault and battery); Count IV (illegal search); Count VI (malicious prosecution); and Count VII (punitive damages).  In addition, the Parx Defendants seek to dismiss all claims against Hogwood and Green, who are alleged to be owners and corporate officers of the Parx Casino.  The Parx Defendants do not seek dismissal of Count V, which asserts tort claims for false arrest/false imprisonment.

*1.      All Claims against Corporate Officers Hogwood and Green*

Addressing first the Parx Defendants' request to dismiss all claims asserted against the Corporate Officers, William Hogwood and Robert Green, Plaintiff alleges that Hogwood and Green are named parties because they are believed to be owners of Parx Casino and Racing, a fictitious name company.  Plaintiff maintains that as a fictitious name, Parx Casino and Racing "can only be sued by suing the owners."  (Pl.'s Parx Resp. 36.)  Plaintiff maintains that under a theory of vicarious liability, Hogwood and Green, as owners of the fictitious name, are liable for the actions of the casino's employees.

Plaintiff's argument is problematic for several reasons.  As pointed out by the Parx Defendants, the company that bears the fictitious name, "Parx Casino and Racing," does not operate or employ individuals.  Instead, the casino, Parx Casino, is operated by a corporate entity, Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino, which is a named

Defendant in this case.  Therefore, the individual Defendant security guards—Baxter, Norcutt, and Doe—are, in actuality, employed by Greenwood Gaming, and not Parx Casino.  By naming the registered corporate owner, Greenwood Gaming, as a Defendant in this matter, Plaintiff has protected his rights to seek relief for the constitutional violations he alleges; claims asserted against the fictitious name company are duplicative and unnecessary.

In addition, Plaintiff has provided no authority for the proposition that an individual listed as an "owner" on a fictitious name registration form can be sued under a theory of vicarious liability when the fictitious name is otherwise operated by a corporate entity subject to suit.  The cases cited by Plaintiff do not support this theory, and the Court is aware of no supporting authority.  The only way that Hogwood and Green can be held liable as owners and officers of Parx Casino is if Plaintiff alleged facts to support a participation theory of liability.  This theory "imposes liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation."  *Hasan v. Macy's, Inc.*, No. 14-2944, 2014 U.S. Dist. LEXIS 113407, at *11 (E.D. Pa. Aug. 14, 2014).

It is well established in Pennsylvania that corporate officers and directors cannot be "held personally liable because of [their] official capacity . . . for the torts committed by the corporation, in the absence of personal participation in the tortious act."  *Chester-Cambridge Bank & Trust Co. v. Rhodes*, 31 A.2d 128, 131 (Pa. 1943); *see also Ueberroth v. Goldner, Papandon, Childs & DeLuccia, LLC*, No. 11-3119, 2012 U.S. Dist. LEXIS 33165, at *7 (E.D. Pa. Mar. 12, 2012).  Under a participation theory of liability, "a corporate officer can be held liable for misfeasance, i.e. the improper performance of an act, but not for mere nonfeasance, i.e. the omission of an act which a person ought to do."  *Brindley v. Woodland Vill. Rest., Inc.*, 652 A.2d 865, 868 (Pa. Super. Ct. 1995) (internal quotation marks omitted); *see also Al-Khazraji v.*

*St. Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986); *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).

Here, Plaintiff does not allege facts showing that Hogwood or Green participated personally in any way with the alleged constitutional violations.  It is insufficient for a plaintiff to merely allege that a corporate officer should be held liable because they are charged with general supervision of the corporation's affairs.  *McCracken v. Daimler Chrysler Motors Co. LLC*, 2008 U.S. Dist. LEXIS 26912, at *9 (E.D. Pa. Apr. 2, 2008) (citing *Rhodes*, 31 A.2d at 131).  Without any facts alleging that either Hogwood or Green participated in the alleged violations, neither Defendant can be held liable as an individual under this theory.  Accordingly, all claims asserted against William Hogwood and Robert Green will be dismissed.

> ### 2.   *Civil Rights Claims under Section 1983 (Count I)*

In Count I of the Complaint, Plaintiff asserts civil rights claims pursuant to 42 U.S.C. § 1983 against the Parx Defendants, except for Commissioner Pawlowski.  Specifically, Plaintiff asserts claims for false arrest, false imprisonment, illegal search, malicious prosecution and malicious abuse of process in violation of the First, Fourth, and Fourteenth Amendments. (Compl. ¶ 61.)

The Parx Defendants contend that they are corporate private entities and private individuals, and as such, are not subject to liability under Section 1983.  The Parx Defendants argue that Plaintiff has failed to allege facts demonstrating that, as private entities and individuals, the Parx Defendants were acting under color of state law during the alleged incident. In addition, the Parx Defendants argue that Plaintiff's allegation—that the Pennsylvania State Police conspired with, provided services to, and aided the financial interests of, the Parx

Defendants—overlooks the investigative and enforcement authority granted to the Pennsylvania State Police in regard to casinos.

To establish a Section 1983 violation, a plaintiff must demonstrate that (1) the defendant deprived the plaintiff of right secured by the Constitution or the laws of the United States; and (2) the defendant was acting under color of state law. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Acting under color of state law "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). Because the analysis with respect to individuals is different from the analysis with respect to corporate entities, we will address the claims against the individual Parx Defendants separate and apart from the claims asserted against the corporate Parx Defendants.

(i)   <u>Individual Parx Defendants – Baxter, Norcutt, and Doe</u>

Generally, private individuals do not act under color of state law, and therefore, are not liable under Section 1983. However, private individuals may be treated as state actors for purposes of Section 1983 in certain circumstances. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). One such circumstance is when the private actor willfully participates in a joint action or conspiracy with the state actor to deprive the plaintiff of a constitutional right. *See Abbott v. Latshaw*, 164 F.3d 141, 147-148 (3d Cir. 1998) ("Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts under color of state law for purposes of § 1983.") (internal quotation marks omitted); *see also Luck v. Mount Airy #1, LLC*, 901 F. Supp. 2d 547, 562-63 (M.D. Pa. 2012) (denying a motion to dismiss a Section 1983 claim where the plaintiff

sufficiently alleged that the state troopers and casino security guards conspired to violate the plaintiff's constitutional rights).

To properly allege a conspiracy as a basis to hold a private party accountable as a state actor for purposes of Section 1983, a  plaintiff must allege that there was an agreement, understanding, or "meeting of the minds" to violate the plaintiff's rights. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, (1970)).  The Complaint should contain specific allegations to infer an agreement or understanding between the private and state actor defendants. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010); *Muhammed v. Pawlowski*, No. 11-5004, 2012 U.S. Dist. LEXIS 30698, at *16-17 (E.D. Pa. Mar. 7, 2012).

With respect to the individual Parx Defendants—Security Manager Baxter, Director Norcutt, and Security Officer John Doe—the Complaint states sufficient facts to maintain a Section 1983 claim.  Specifically, Plaintiff alleges that these Defendants worked in concert and conspired with the Pennsylvania State Police to deter card counting by making an example out of Plaintiff, thus committing false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process in violation of his Fourth Amendment rights against unreasonable search and seizure.  To support this conspiracy, Plaintiff alleges that on September 27, 2010, a Parx Casino security officer took him into the State Police headquarters within the casino and handcuffed him to a bench.  Plaintiff further alleges that the Parx Casino employees and the state troopers had a meeting where they discussed their next steps, including deciding to strip search Plaintiff and bring charges against him.  Plaintiff alleges that the conspiracy centers on an agreement between Parx Casino employees and the state troopers where the troopers would be paid money in exchange for offering their enforcement powers.  Accepting all of these

16

allegations as true, and drawing all reasonable inferences in Plaintiff's favor, we conclude that Plaintiff has sufficiently alleged that the individual Parx Defendants are state actors for purposes of Section 1983.  The Parx Defendants' Motion to Dismiss these claims against Defendants Baxter, Norcutt and Doe will be denied.

    (ii)  <u>The Corporate Parx Defendants</u>[13]

   The analysis is different with regard to the corporate Parx Defendants.  In addition to showing that the corporate Parx Defendants were acting under color of state law, Plaintiff must also show that the alleged conspiracy was the result of a Parx Casino custom or policy.  It is well established that a municipality cannot be held liable in a Section 1983 action under a theory of respondeat superior.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  Rather, the plaintiff must show that the municipality itself, through the implementation of a policy, custom, or practice, caused the constitutional violation.  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  The standard for municipal liability in civil rights actions espoused in *Monell* applies equally to private corporations.  *Victory Outreach Ctr. v. Melso*, 371 F. Supp. 2d 642, 646 (E.D. Pa. 2004); *Thomas v. United States Airways*, No. 13-6121, 2014 U.S. Dist. LEXIS 65455, at *13-14 (E.D. Pa. May 13, 2014) (applying *Monell* to Section 1983 claim asserted against private airline); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to a state prison pursuant to a local government contract).

---

[13] The corporate Parx Defendants include Bensalem Racing, Keystone Turf Club, Greenwood Gaming, and Greenwood Racing.  As we explain above, all claims against the Parx Defendants William Hogwood and Robert Green, who are alleged to be owners and corporate officers of the Parx Casino, will be dismissed.

Plaintiff has not alleged that the Parx Defendants had a policy, custom, or practice that was the moving force behind Plaintiff's constitutional harm.[14]  Rather, Plaintiff alleges that the Parx Defendants and the state troopers "acted in concert" and engaged in a "conspiracy" to violate Plaintiff's constitutional rights.  This is insufficient.  *See Thomas*, 2014 U.S. Dist. LEXIS 65455, at *13-14 (E.D. Pa. May 13, 2014) (granting private airline's motion to dismiss Section 1983 claim where plaintiff merely alleged a conspiracy, and not that the conspiracy was a result of an airline custom or policy); *Luck*, 901 F. Supp. 2d at 564 (granting Casino defendant's motion to dismiss Section 1983 claim because the plaintiff did not allege that the casino had a policy or custom that caused the alleged violation of the plaintiff's constitutional rights).  Count I will be dismissed against the corporate Parx Defendants—Bensalem Racing, Keystone Turf Club, Greenwood Gaming, and Greenwood Racing.

> 3.    *Assault and Battery (Count III)*

In Count III of the Complaint, Plaintiff asserts state law claims for assault and battery against all of the Parx Defendants, except for Commissioner Pawlowski.  The Parx Defendants argue that the claim should be dismissed because the Complaint alleges that State Trooper Burnett conducted the body cavity search of Plaintiff, not any of the Parx Defendants.  (Parx Mem. 10.)  Plaintiff responds that, although none of the Parx Defendants actually touched Plaintiff during the strip search, they aided and abetted, and conspired with, Trooper Burnett to commit the assault and battery.

Under Pennsylvania law, "[a]n assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact."  *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing Restatement (Second), of Torts, § 21).  A battery is committed when the

---

[14] Plaintiff only makes these *Monell*-sounding claims against Commissioner Pawlowski in Count II.

actor intends "to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results." *Montgomery v. Bazaz-Sehgal*, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999) (quoting Restatement (Second) of Torts, § 18(a)-(b)).

Plaintiff relies on *Keich v. Frost*, 63 Pa. D. & C. 2d 499 (Pa. Ct. Com. Pl. 1973). In *Keich*, the court denied summary judgment on an assault claim asserted against defendants who did not strike the plaintiff, but who were alleged to have assisted in the assault. *Id*. at 502. The court stated that although the defendant was not the one who struck the plaintiff, he could still be liable "through a showing of common design or mutual aid in bringing about harm to plaintiff." *Id*. The court in *Keich* also stated that "where one is present and does not actually commit the battery, it must be proved that he was aiding, assisting, and promoting the battery." *Id*. The concert-of-action theory articulated in *Keich* has been rejected by at least one court in this district. *See In Giannone v. Ayne Inst*., 290 F. Supp. 2d 553, 568 (E.D. Pa. 2003) (rejecting *Keich* and stating that "we predict that the Pennsylvania Supreme Court would recognize no concert-of-action theory that would entitle [the plaintiffs] to recover from any of the other individual [defendants] for assault and battery committed by [the principle actors]"). *But see Ricker v. Weston*, No. 99-5879, 2000 U.S. Dist. LEXIS 16810, at *48-49 (E.D. Pa. Nov. 22, 2000) (citing *Keich* for the proposition that "defendants who behave by common design or mutual aid in bringing about an injury to the plaintiff may all be liable for assault and battery even if only one defendant actually struck the plaintiff), *reversed on other grounds*, 27 F. App'x 113 (3d Cir. 2002).

Whether or not the Pennsylvania Supreme Court would recognize a "concert-of-action theory" is beside the point. Based on our review of the case law, it is apparent that an assault

claim may be maintained against a defendant who was not the principal actor; however, that

defendant, at the very least, must have been present for the assault, and provided instruction or

encouragement to the principal actor.  *See Pascocciello v. Interboro Sch. Dist.*, No. 05-5039,

2006 U.S. Dist. LEXIS 27390, at *30-31 (E.D. Pa. May 8, 2006) (dismissing assault and battery

claims where the defendant did not personally assault or batter the plaintiff, was not present

when the assault and battery occurred, and did not instruct or encourage the other defendant to

assault or batter the plaintiff); *Lakits v. York*, 258 F. Supp. 2d 401, 407-08 (E.D. Pa. 2003)

(extrapolating from Pennsylvania case law that assault and battery claim cannot be maintained if

the defendant was not the principal actor, was not present at the scene, and did not otherwise

instruct or encourage the principal actor to commit the assault and battery); *D'Errico v. DeFazio*,

763 A.2d 424, 431 (Pa. Super. Ct. 2000) (granting summary judgment to defendant sheriff on

assault claim where there was no evidence that he was present during the alleged assault, was not

the principal actor, and did not instruct or encourage the principal actors to act).

 Viewing the facts most liberally in favor of Plaintiff, we are satisfied that the Complaint

states a plausible claim for assault and battery against the Parx Defendants.  Plaintiff alleges that

the Parx security guards aided Trooper Burnett in escorting Plaintiff to the employee bathroom,

and Trooper Burnett ordered him to strip naked, and conducted the body cavity search.  Plaintiff

also alleges that the Parx security guards were present during the assault, and that one of them

held the door open so that passersby could witness the search.  The Complaint sufficiently

alleges that the Parx Casino guards provided some aid to Trooper Burnett.  If after discovery, it

is revealed that the aid provided by the Parx security guards does not rise to the level of

instruction or encouragement, then Defendants may seek dismissal of the claim through

summary judgment.  The Parx Defendants' request to dismiss the assault and battery claims will be denied.

### 4.       Illegal Search (Count IV)

In Count IV of the Complaint, Plaintiff asserts tort claims for "illegal search" and "illegal strip search" against the Parx Defendants.  Defendants seek dismissal of this count, arguing that Pennsylvania does not recognize a tort claim for illegal search or for illegal strip search.  The Court is unaware of any cases describing a tort claim for illegal search or illegal strip search in Pennsylvania.  The one case cited by Plaintiff, *Lancie v. Giles*, 572 A.2d 827 (Pa. Commw. Ct. 1990), does not support Plaintiff's position that the tort is recognized in Pennsylvania.  In *Lance*, the plaintiff pursued a Section 1983 civil rights claim for illegal search against the defendants, not a tort claim.  *Id.* at 828.  In any event, Plaintiff has asserted civil rights claims and assault and battery claims against the Parx Defendants.  His tort claims for illegal search and illegal strip search, even if they were recognized in Pennsylvania, are duplicative.  Count IV will be dismissed against the Parx Defendants.

### 5.       Malicious Prosecution (Count VI)

In Count VI, Plaintiff asserts a state law claim for malicious prosecution against the Parx Defendants.  Under Pennsylvania law, a plaintiff asserting a malicious prosecution claim must prove:  (1) that the defendant instituted proceedings against the plaintiff without probable cause; (2) with malice; and (3) that the proceedings terminated in the plaintiff's favor.  *Kelley v. Gen. Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988); *see also Griffiths v. CIGNA Corp.*, 988 F.2d 457, 463 (3d Cir. 1993).

The Parx Defendants seek dismissal of this claim, arguing that because Plaintiff disposed of his criminal charges through participating in Pennsylvania's ARD program, the proceedings

did not terminate in his favor, and thus, he cannot state a claim for malicious prosecution. The Parx Defendants are correct that disposition through ARD does not qualify as favorable termination of charges for purposes of malicious prosecution claims. *See Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (holding that the ARD program is not a favorable termination for purposes of a malicious prosecution claim);[15] *Garcia v. Pa. State Police*, No. 11-4073, 2011 U.S. Dist. LEXIS 118866, at *11-12 (E.D. Pa. Oct. 14, 2011) (same); *Junod v. Bader*, 458 A.2d 251, 254 (Pa. Super. Ct. 1983) (stating that "even though successful completion of an ARD program terminates the prosecution, that termination is a court-supervised compromise, and therefore, as a matter of law, is not sufficiently favorable to the accused to entitle him to subsequently bring a malicious prosecution action against his accuser") (internal citations omitted).

Plaintiff concedes that the case law overwhelmingly supports the Parx Defendants' position. Nevertheless, Plaintiff requests that we go against the weight of the authority and find that participation in the ARD program means that the proceedings did in fact terminate in Plaintiff's favor. This we will not do. The case law in Pennsylvania and the Third Circuit is uniform and sound. Plaintiff's state law malicious prosecution claims will be dismissed.

### 6.   *Punitive Damages (Count VII)*

In Count VII, Plaintiff asserts a claim for punitive damages against the Parx Defendants, alleging that Defendants' actions were "outrageous, wanton, willful and reckless." (Compl.

---

[15] In *Gilles*, the Third Circuit stated that "[w]hen a criminal defendant is selected for and decides to participate in the ARD program, he avoids trial and potential jail time, and receives expungement of the record in exchange for successfully completing a probationary period." 427 F.3d at 209. Further, "[b]y entering the ARD program, the defendant waives his right to prove his innocence, but that at the same time, does not admit guilt." *Id.* The burdens placed on a criminal defendant undergoing the ARD program in Pennsylvania, such as probation, restitution, and costs, are not consistent with innocence. *Id.* at 211.

¶ 88.)  The Parx Defendants argue that dismissal of Count VII is appropriate because the facts fail to allege that Defendants' actions were in any way intentional, reckless, or outrageous.

Under Pennsylvania law, punitive damages may be awarded "when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citation omitted).  "A defendant acts recklessly when 'his conduct creates an unreasonable risk of . . . harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Hutchison v. Luddy*, 870 A.2d 766, 771 (Pa. 2005) (quoting Restatement (Second) of Torts § 500).

Plaintiff alleges that Defendants conspired and agreed with each other to violate Plaintiff's constitutional rights by handcuffing him to a bench, threatening him, and performing a body cavity search on him in the plain view of Casino employees.  Plaintiff further alleges that pursuant to this conspiracy, they charged him with crimes for which he was not guilty, and defamed him by causing media stories to be published about the incident.  Plaintiff asserts that this was done not for the purpose of proper law enforcement, but rather to humiliate Plaintiff, make an example of him, and deter Plaintiff and others from card counting, which he contends is legal.  Viewing these allegations as true, and in the light most favorable to Plaintiff, we conclude that a reasonable juror could find that this conduct was outrageous, or at the least, recklessly indifferent to Plaintiff's rights.  At this juncture, we will not dismiss Plaintiff's claim for punitive damages.

IV.     **CONCLUSION**

For the foregoing reasons, the Commonwealth Defendants' Motion to Partially Dismiss will be granted, and the Parx Defendants' Motion to Dismiss will be granted in part, and denied in part.  An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**