IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GALLAGHER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-3840 |
| ROBERT GREEN, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.** **NOVEMBER 10, 2015**

Presently before the Court is the Motion for Summary Judgment Submitted on Behalf of Defendants Bensalem Racing Association, Inc., Keystone Turf Club, Inc., Greenwood Gaming and Entertainment, Inc., Parx Casino and Racing, Greenwood Racing Inc., Security Manager Baxter, and Director Norcutt (ECF No. 49), and Defendants Brenda Armstrong and William Burnett's Partial Motion for Summary Judgment (ECF No. 50). For the following reasons, Defendants' Motions will be granted.

## I. BACKGROUND

Plaintiff John Gallagher brought this action under Section 1983 and Pennsylvania law, against Defendants associated with Parx Casino and Racing ("Parx Casino"),[1] and against Defendants associated with the Pennsylvania State Police.[2] Plaintiff alleges that he was

---

[1] The Parx Defendants include: Robert Green; William Hogwood; Bensalem Racing Association, Inc.; Keystone Turf Club, Inc.; Greenwood Gaming and Entertainment, Inc.; Greenwood Racing, Inc.; Security Manager Baxter; Director Norcutt; and John Doe (collectively, the "Parx Defendants"). *See Gallagher v. Green*, No. 12-3840, 2014 U.S. Dist. LEXIS 140740, at *2-3 n.2 (E.D. Pa. Oct. 2, 2014). All claims against Defendants Green and Hogwood were dismissed at the motion to dismiss stage.

[2] The Commonwealth Defendants include: Corporal Brenda Armstrong; Trooper William Burnett; and Commissioner Frank Pawlowski (collectively, the "Commonwealth Defendants"). *See Gallagher*, 2014 U.S. Dist. LEXIS 140740, at *2-3 n.3. All claims against Commissioner Pawlowski were dismissed at the motion to dismiss stage.

unlawfully detained, searched, and prosecuted after having been found with a card-counting device while playing Blackjack at Parx Casino. A number of Plaintiff's claims were dismissed at a motion to dismiss stage. *See Gallagher*, 2014 U.S. Dist. LEXIS 140740. Defendants now seek summary judgment.[3]

**A. Factual Background**[4]

Plaintiff was a Philadelphia police officer from 1978 until 2010, when he resigned. (Gallagher Dep. 15-16, 20, Pl.'s Parx Resp. Ex. A, ECF No. 52.) On September 27, 2010, at approximately 10:00 a.m., Plaintiff was playing Blackjack at the Parx Casino. (*Id*. at 25.) He was using a card-counting device, which he purchased on the internet approximately six months prior. (*Id*. at 25, 27.) The device was in his pants pocket. (*Id*. at 31.)[5] Plaintiff did not believe that use of the device was illegal. (Gallagher Dep. 42, 44.) However, he did believe that it may have been against Casino policy. (*Id*. at 44.) Plaintiff used the device to gain an advantage when playing Blackjack. (*Id*. at 51.)

On September 27, Plaintiff used the card-counting device for about two hours prior to

[3] The Park Defendants seek summary judgment on all remaining claims asserted against them. The Commonwealth Defendants seek summary judgment on all claims, with the exception of the illegal search claim asserted under Section 1983 (Count 1) against Trooper Burnett.

[4] We view of all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ*., 442 F.3d 848, 852 (3d Cir. 2006).

[5] When a high card was presented during the Blackjack hand, Plaintiff pressed the button on the left, and when a low card was presented, he pressed the bottom right button. (Gallagher Dep. 29-30.) The device would reveal to Plaintiff how many high cards were left in the deck compared to how many low cards were left by vibrating a certain number of times. (*Id*. at 31.)

being approached by Corporal Brenda Armstrong. (Gallagher Dep. 34-35.)[6] Corporal Armstrong had been advised by Defendant Norcutt, Director of Surveillance at Parx Casino, that he believed an individual was using a cheating device. (Armstrong Dep. 38.) Corporal Armstrong went to the surveillance room and observed Plaintiff moving his right hand in his pants pocket while using his left hand to play Blackjack. (*Id*. at 37.) Corporal Armstrong believed that the possession of devices like the one used by Plaintiff was a violation of the criminal provisions of the Gaming Act. (*Id*. at 32.)

Corporal Armstrong and Defendant Baxter, the Security Manager at Parx Casino, went to speak to Plaintiff. (Armstrong Dep. 38.) Armstrong identified herself as being with the Pennsylvania State Police. (Gallagher Dep. 39.) Corporal Armstrong told Plaintiff to keep his hands out of his pockets. She then returned to her office. (*Id*. at 37; Armstrong Dep. 42.) Plaintiff continued to play Blackjack at the same table at which he had been playing. (Gallagher Dep. 42.) He moved the card-counting device from his pocket to his shirt sleeve in an effort to conceal the device. (*Id*. at 43-44.)

Approximately thirty minutes later, Norcutt called Corporal Armstrong to advise her that Plaintiff was engaging in the same suspicious activity; however, this time, he had the device in his shirt sleeve, not his pants pocket. (Armstrong Dep. 42.) Corporal Armstrong observed Plaintiff's conduct on video, and believed that it "rose to the level . . . [of] suspicion to believe that he was in possession of some illegal device that gave him an unfair advantage." (*Id*. at 42-43.) Based on this conclusion, Corporal Armstrong, together with Trooper Burnett and Security Manager Baxter, approached Plaintiff at the Blackjack table and escorted him off of the gaming

---

[6] Corporal Armstrong is a Pennsylvania State Trooper. (Armstrong Dep. 9-10, Commw. Mot. Ex. B.) She began working at Parx Casino in 2007. (*Id*. at 10-11.)

floor to the State Police office located in the Parx Casino. (*Id*. at 43-44; Gallagher Dep. 52-54; Burnett Dep. 9-10, Commw. Mot. Ex. C.) While walking from the gaming floor to the police offices, Plaintiff moved the card-counting device from his sleeve back to his pants pocket. (Gallagher Dep. 57.) Corporal Armstrong asked Plaintiff if anything was in his pocket, and Plaintiff responded in the negative. (Armstrong Dep. 45.) She proceeded to pat down Plaintiff and she removed the device from Plaintiff's pocket. (*Id*. at 46.) Corporal Armstrong directed Trooper William Burnett to take Plaintiff to the bathroom for a more involved search. (*Id*. at 47.)[7] She did not intend that Plaintiff would be strip-searched. (*Id*. at 48.)[8]

Trooper Burnett, accompanied by Baxter, took Plaintiff into the bathroom in the State Police Office. (Gallagher Aff. 1, Pl.'s Parx Resp. Ex. B; Armstrong Dep. 20-22.)[9] Trooper Burnett advised that he was going to strip search Plaintiff, and stated to Plaintiff, "[i]f you say one fucking word or make one wrong move your head is going through that fucking wall." (Gallagher Aff.) Trooper Burnett ordered Plaintiff to remove all of his clothing. (*Id*.)[10] After Plaintiff removed his clothing, Trooper Burnett "ordered [Plaintiff] to bend over and spread [his] buttock cheeks to conduct a body cavity search." (*Id*.; Gallagher Dep. 82) At the time of the

---

[7] Trooper Burnett is a Pennsylvania State Police trooper, who began working at Parx Casino in 2007. (Burnett Dep. 6.)

[8] Corporal Armstrong believed that a more involved pat-down involved lifting Plaintiff's shirt, checking around his waistband, patting down the outside of his clothing, and having him remove his shoes and socks. (Armstrong Dep. 48-49.)

[9] The State Police office bathroom is shared only by State Police and gaming board members, and is not open to the general public. (Armstrong Dep. 51-52.) Plaintiff disputes this, and avers that he was taken to a bathroom that is open to all casino employees. (Gallagher Dep. 69, 80.)

[10] Trooper Burnett disputes that he ordered Plaintiff to remove his clothing. He testified that Plaintiff's pants and underpants "fell down on their own." (Burnett Dep. 16-17.)

search, Trooper Burnett and Plaintiff were the only people in the bathroom. (Gallagher Dep. 80.) Baxter was holding the door. (Gallagher Aff.) Plaintiff states that the door was held open so that Parx employees could view Plaintiff getting body-cavity searched. (Gallagher Aff.)[11] Baxter did not say anything while Plaintiff was searched in the bathroom. (Gallagher Dep. 122.) Corporal Armstrong was not present during the search. (*Id*. at 80.) Trooper Burnett found nothing on Plaintiff during the search conducted in the bathroom. (Burnett Dep. 24-25.) [12]

After Plaintiff got dressed, he was taken to a room down the hall where he was interviewed by Corporal Armstrong and Sergeant Kevin Conrad, the Commanding Officer of the Pennsylvania State Police office at the Parx Casino. (Gallagher Dep. 87-88; Conrad Dep. 9.) There he signed a Rights Warning and Waiver, and gave a statement to the officers. (Gallagher Dep. 62-64; Waiver, Commw. Mot. Ex. F.) Plaintiff admitted that the device he was carrying was a card-counter, that he purchased the device on the internet, and that he believed the device was not illegal. (Gallagher Dep. 67; Armstrong Dep. 64.) After the interview, Plaintiff was handcuffed to a bench where he remained for approximately an hour. (Gallagher Dep. 90-91.) Meanwhile, Sergeant Conrad contacted casino management and confirmed that they wished to pursue charges against Plaintiff. (Conrad Dep. 27.) Although Sergeant Conrad understood that the use of a card-counting device was illegal in Pennsylvania, he nevertheless contacted the

[11] Corporal Armstrong and Trooper Burnett testified that during the search the door was open only slightly, and that Baxter was outside of the bathroom. (Armstrong Dep. 54-55; Burnett Dep. 14-15.)

[12] A strip-search involves exposing the genitals, and is only permissible in felony cases or when there is probable cause that the suspect possesses a weapon or controlled substance. (Armstrong Dep. 96; Conrad Dep. 62, Commw. Mot. Ex. D.) In addition, a strip search may only take place after supervisory approval and documentation in a police incident report. (Conrad Dep. 62.) A search warrant is required to conduct a body-cavity search. If obtained, the body-cavity search must be done by trained medical personnel. (*Id*. at 65.) Conducting either a strip search or a body cavity search of Plaintiff during the incident in question would have violated State Police criteria. (*Id*. at 62-63, 65-66; Armstrong Dep. 96-97; Burnett Dep. 27-29.)

Bucks County District Attorney's Office, and was advised by them that charges against Plaintiff were appropriate. (*Id*. at 12-13, 27.) Plaintiff was fingerprinted, photographed, and then escorted out of the casino by Baxter. (Gallagher Dep. 91-92, 124; Armstrong Dep. 69-70.)

In October 2010, Plaintiff received a Bucks County Criminal Complaint, charging him with violation of Title 4 of the Gaming Act, and Theft by Deception. (Gallagher Dep. 98; Crim. Compl., Commw. Mot. Ex. H.) On January 26, 2011, Plaintiff entered the Accelerated Rehabilitative Disposition ("ARD") Program. (Gallagher Dep. 100.) He completed the program one year later. (*Id*.) Plaintiff retired from the Philadelphia Police Force on the day of the incident, fearing he would be fired and lose his pension and health benefits. (*Id*. at 103, 106-07.) Plaintiff had never been arrested or disciplined prior to this incident. (*Id*. at 22.)

**B. Procedural History**

Plaintiff filed a Second Amended Complaint on September 14, 2012, asserting various claims under Section 1983 and state law. (Sec. Am. Compl., ECF No. 21.)[13] On October 2, 2014, we granted the Commonwealth Defendants' motion to dismiss, and granted in part and denied in part the Parx Defendants' motion to dismiss.[14] On April 14, 2015, the Parx Defendants

---

[13] Specifically, Plaintiff asserted claims for false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process under Section 1983. (Sec. Am. Compl.) Plaintiff asserted state law claims for assault and battery, illegal search, malicious prosecution, false arrest, and false imprisonment. (*Id*.) He also sought punitive damages. (*Id*.)

[14] With regard to the Commonwealth Defendants, we dismissed all claims asserted against Commissioner Pawlowski, and dismissed Counts 3, 4, 5, and 6 against Defendants Armstrong and Burnett. Defendants Armstrong and Burnett did not seek dismissal of Count 1, which asserted claims under Section 1983, nor the claim for punitive damages in Count 7. (Oct. 2 Order, ECF No. 37.)

With regard to the Parx Defendants, we dismissed all claims against Defendants Green and Hogwood. We also dismissed Count 1 (claims under Section 1983) against Defendants Bensalem Racing, Keystone Turf Club, Greenwood Gaming, and Greenwood Racing, but not against Defendants Baxter and Norcutt. Finally, we dismissed Counts 4 and 6 against all Parx Defendants, but declined to dismiss Counts 3 and 7. (*Id*.)

filed a Motion for Summary Judgment. (Parx Mot.) On April 15, 2015, the Commonwealth Defendants filed a Motion for Partial Summary Judgment. (Commw. Mot.) The Commonwealth Defendants seek dismissal of all remaining counts, with the exception of the illegal search claim asserted in Count 1 against Trooper Burnett, and the punitive damages claim in Count 7 asserted against Trooper Burnett. On April 27, 2015, Plaintiff filed a Response to the Parx Defendants' Motion. (Pl.'s Parx Resp.) On April 29, 2015, Plaintiff filed a Response to the Commonwealth Defendants' Motion. (Pl.'s Commw. Resp., ECF No. 52.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*. The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc*., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester, Pa*., 891 F.2d 458, 461 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir.

2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. COMMONWEALTH DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION

The Commonwealth Defendants seek dismissal of the Section 1983 Claims asserted against Corporal Armstrong and Trooper Burnett in Count 1. These claims include false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process. In support of their request to dismiss the Section 1983 claims, Defendants contend that Plaintiff's participation in the ARD program bars the claims for false arrest, false imprisonment, and malicious prosecution. (Commw. Mot. 13.) Defendants also contend that Plaintiff fails to establish a claim for malicious abuse of process. Finally, Corporal Armstrong argues that Plaintiff fails to establish an illegal search claim against her. Trooper Burnett does not seek summary judgment on the illegal search claim.

Plaintiff concedes that the dismissal of the malicious abuse of process claim and the malicious prosecution claim against both Defendants is appropriate. (Pl.'s Commw. Resp. 19.)[15]

---

[15] The Court concluded in its October 2, 2014 Memorandum that the malicious prosecution claims were not viable as a result of Plaintiff's participation in the ARD program. *Gallagher*, 2014 U.S. Dist. LEXIS 140740, at *32 (concluding that Plaintiff failed to meet an essential element of his claim because "disposition through ARD does not qualify as favorable

Plaintiff also concedes that the evidence does not support a claim for illegal search against Corporal Armstrong and agrees to the dismissal of that claim. (Pl.'s Commw. Resp. 19-20.) We will therefore turn our attention to Plaintiff's remaining claims against the Commonwealth Defendants: false arrest and false imprisonment.

The Commonwealth Defendants argue that Plaintiff's claims are barred by the favorable-termination rule set forth in *Heck v. Humphry*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87 (emphasis in original). In *Gilles*, the Third Circuit determined that, under *Heck*, "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." 427 F.3d at 208-09. The *Gilles* court also determined that participation in an ARD program does not result in a favorable termination under *Heck*. *Id*. at 211-12. As a result, the plaintiff's Section 1983 claims were barred. *Id*. In this case, Plaintiff's charges were not reversed, invalidated, or called into question. Rather, they were expunged through his participation in the ARD program. Under *Heck* and *Gilles*, Plaintiff's § 1983 claims are barred. *See Garcia v. Pa. State Police*, No. 22-4073, 2011 U.S. Dist. LEXIS 118866, at *13 (E.D. Pa. Oct. 14, 2011) (dismissing the plaintiff's section 1983 claim for unlawful detention where the plaintiff entered an ARD program, "which would be at odds with the favorable termination rule

---

termination of charges for purposes of malicious prosecution claims") (citing *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005)).

of *Heck* and *Gilles*").

Even if the *Heck* doctrine did not bar Plaintiff's claims for false arrest and false imprisonment, the Commonwealth Defendants are nevertheless entitled to summary judgment on these claims because probable cause existed for the arrest and detention of Plaintiff. To establish a claim for false arrest or false imprisonment, Plaintiff must show that the arrest or detention occurred without the existence of probable cause. *Murphy v. Bendig*, 232 F. App'x 150, 153 (3d Cir. 2007).[16] Probable cause is found "where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (noting that probable cause to arrest exists "if at the moment the arrest was made the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense" (internal quotations and citations omitted)).

Plaintiff does not dispute that he was carrying a card-counting device. Instead, he contends that probable cause was lacking because possession of such a device is not a crime. However, Plaintiff does not cite one case that supports this proposition. Indeed, Sergeant Conrad was advised by the Bucks County District Attorney's Office that charges against Plaintiff under

[16] False arrest and false imprisonment claims are essentially the same, except that false arrest requires a showing of arrest and false imprisonment requires a showing of detention. *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). Both claims require a plaintiff to prove that the arresting officer lacked probable cause. *Sheedy v. City of Phila.*, 184 F. App'x 282, 284 (3d Cir. 2006).

Title 4 of the Gaming Act were appropriate. In addition, Corporal Armstrong, who prepared the Affidavit of Probable Cause for Plaintiff's Criminal Complaint, believed that possession of a card-counting device was a violation of the criminal enforcement section of Title 4 of the Gaming Act. Moreover, Plaintiff was charged with violating the Gaming Act and Theft by Deception, was placed in the ARD program by the Bucks County Court, and served one year of ARD probation. The police officers clearly had probable cause to arrest and charge Plaintiff. Accordingly, the false arrest and false imprisonment claims asserted in Count 1 will be dismissed against the Commonwealth Defendants.

## IV. THE PARX DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Norcutt and Baxter move for judgment on Count 1 of the Second Amended Complaint, which asserts claims under Section 1983 for false arrest, false imprisonment, illegal search, malicious prosecution and malicious abuse of process in violation of the First, Fourth, and Fourteenth Amendments. Plaintiff concedes to the dismissal of Count 1 against Norcutt. (Pl.'s Parx Resp. 23.)[17] In addition, the Parx Defendants seek summary judgment of the assault and battery claim asserted in Count 3. Finally, the Parx Defendants seek judgment on Count 7, which seeks punitive damages against Defendants.

### A. Section 1983 Claims against Baxter (Count 1)

Baxter argues that he is entitled to judgment on Count 1 because Plaintiff has failed to establish that, as a private individual, he acted under the color of law, to deprive Plaintiff of his constitutional rights. To establish a Section 1983 violation, Plaintiff must demonstrate that (1) Baxter deprived him of a right secured by the Constitution or the laws of the United States;

[17] Plaintiff states that "[w]ith regard to Mr. Norcutt, plaintiff has no objection to him being dismissed from [Count 1] and all other counts, as there has been no evidence against him determined during discovery." (Pl.'s Parx Resp. 23.)

and (2) Baxter was acting under color of state law. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). In our October 2 Memorandum, we observed that private individuals such as Baxter generally do not act under color of state law, and are therefore not liable under Section 1983. *Gallagher*, 2014 U.S. Dist. LEXIS 140740, at *23. However, a private individual may be liable under Section 1983 if he "willfully participates in a joint action or conspiracy with the state actor to deprive the plaintiff of a constitutional right." *Id.* at *23 (citing *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998)). To establish liability on the part of the private actor, the Plaintiff must show "that there was an agreement, understanding or 'meeting of the minds' to violate [Plaintiff's] rights." *Id*. (quoting *Startzell v. City of Phila*., 533 F.3d 183, 205 (3d Cir. 2008)).

In our October 2 Memorandum, we denied Baxter's request to dismiss Count 1 because the Second Amended Complaint alleged a conspiracy, which "center[ed] on an agreement between Parx Casino employees and the state troopers where the troopers would be paid money in exchange for offering their enforcement powers." *Id*. at 12. Discovery has been completed, and Plaintiff has failed to set forth any facts to support the existence of such a conspiracy. Instead, Plaintiff contends that Baxter should be liable because he held the bathroom door half-way open while Plaintiff was subjected to a body cavity search by Trooper Burnett. This is not sufficient. It does not show that there was an agreement or "meeting of the minds" between Baxter and Trooper Burnett to violate Plaintiff's constitutional rights. Accordingly, Count 1 will be dismissed against Baxter.

**B. Assault and Battery**

The Parx Defendants also seek judgment on the assault and battery claims asserted in Count 3 of the Second Amended Complaint, arguing that the record is devoid of any evidence

that Baxter or any other Parx Defendant provided instruction or encouragement to Trooper Burnett during the alleged body-cavity search. In our October 2 Memorandum, we concluded that a defendant who was not the principal actor in committing the assault or battery could nevertheless be liable for these torts upon evidence that he or she was "present for the assault, and provided instruction or encouragement to the principal actor." *Gallagher*, 2014 U.S. Dist. LEXIS 140740, at *29 (citing cases). Based on the allegations in the Second Amended Complaint, we declined to dismiss the assault and battery claims.

The Parx Defendants now claim that, after engaging in discovery, Plaintiff has failed to set forth any facts showing the requisite instruction or encouragement on the part of any Parx Defendant. We agree. Trooper Burnett warned Plaintiff that he would be strip-searched, and that if he said anything or made a move, his head would go through the wall. Trooper Burnett ordered Plaintiff to remove his clothing and conducted a body-cavity search on him. Viewing the facts in a light most favorable to Plaintiff, Baxter's involvement was limited. He simply held the door, which was partially open. Plaintiff admits that Baxter did not say anything prior to or during the body-cavity search. Although Baxter was present, that is not enough. Simply being in the area where the body-cavity search was being conducted, without more, does not establish intent "to cause an imminent apprehension of a harmful or offensive bodily contact." *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing Restatement (Second), of Torts, § 21). Plaintiff has failed to show that Baxter in any way instructed or encouraged Trooper Burnett to violate Plaintiff's constitutional rights. Accordingly, Count 3 will be dismissed.

Because all claims against the Parx Defendants are dismissed, we need not consider Plaintiff's claim for punitive damages against these Defendants. Accordingly, Count 7 will be dismissed against the Parx Defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted.

An appropriate Order will follow.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**