IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN GALLAGHER     :
           :   CIVIL ACTION
    v.      :
           :   NO. 12-3840
ROBERT GREEN, ET AL.   :

**<u>MEMORANDUM</u>**

**SURRICK, J.**                    JUNE <u> 9 </u>, 2016

   Presently before the Court is the Post-Trial Motion of Defendant William Burnett Pursuant to Fed. R. Civ. P. 50(b) and 59 for Judgment as a Matter of Law or, in the Alternative, for a New Trial.  (ECF No. 88.)  For the following reasons, Defendant's Motion will be denied.

**I.  BACKGROUND**

   In this action, Plaintiff John Gallagher sought damages under 42 U.S.C. § 1983 and Pennsylvania law against Defendant William Burnett, a Pennsylvania State Trooper, and other Defendants associated with the Pennsylvania State Police and with the Parx Casino Racing ("Parx Casino").  Plaintiff alleged that on September 27, 2010, he was unlawfully detained, searched, and prosecuted after having been found with a card-counting device while playing Blackjack at Parx Casino.  Many of Plaintiff's claims were dismissed at the motion to dismiss stage and at the summary judgment stage.  At the time of trial, the only claims that remained were an unreasonable search claim and a claim for punitive damages against Defendant Burnett. Following a three-day trial, the jury returned a verdict in favor of Plaintiff and awarded Plaintiff $125,000 in compensatory damages.  Defendant now moves for post-trial relief under Federal Rules of Civil Procedure 50 and 59.

A.     **Factual Background**[1]

From 1978 until 2010, Plaintiff was a Philadelphia police officer.  (Jan. 19 Trial Tr. 39-40, ECF No. 94.)  On September 27, 2010, at approximately 9:00 a.m., Plaintiff was playing Blackjack at the Parx Casino.  (*Id*. at 42, 45.)  He was using a card-counting device, which he had purchased on the internet approximately six months earlier.  (*Id*.)  The device was in his pants pocket.  (*Id*. at 45.)  After approximately an hour and a half of playing Blackjack, Plaintiff was approached by Corporal Brenda Armstrong of the Pennsylvania State Police.  (*Id*. at 45-46.)  Corporal Armstrong had been advised by the Director of Surveillance at Parx Casino of suspicious activity by an individual playing Blackjack.  (Jan. 20 Trial Tr. 122-23, ECF No. 95.)  Corporal Armstrong asked Plaintiff why his hand was in his pocket.  Plaintiff responded that his hand was cold.  (Jan. 19 Trial Tr. 46.)  Plaintiff did not believe that the card-counting device was illegal; however, he did believe that it was against the casino's regulations.  (*Id*. at 43.)  Corporal Armstrong warned Plaintiff to keep his hands out of his pocket.  (*Id*. at 47.)  After Corporal Armstrong walked away from the table, Plaintiff moved the device from his pants pocket to the sleeve of his shirt.  (*Id*. at 46-47.)

After about 30 minutes, Plaintiff was again approached by Corporal Armstrong, who asked Plaintiff to follow her to the Pennsylvania State Police ("PSP") office located in the casino.  (*Id*. at 47.)  Security Officer James Baxter accompanied Corporal Armstrong.  (Jan. 20 Trial Tr. 56.)[2]  While being escorted to the PSP office, Plaintiff moved the card-counting device back to his pants pocket.  (Jan. 19 Trial Tr. 48.)

---

[1] We view all facts and draw all reasonable inferences in favor of the verdict winner, here Plaintiff.  *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984).

[2] Corporal Armstrong and Security Officer Baxter were named as Defendants in this lawsuit.  All claims against them were dismissed at summary judgment.

When he arrived at the PSP office, Plaintiff was asked to empty his pockets. (*Id*.) Plaintiff complied, and removed the card-counting device from his pocket. (*Id*.) Plaintiff told Corporal Armstrong that the device was a card-counter. (*Id*.) Corporal Armstrong then performed a pat-down search of Plaintiff. (*Id*.; Jan. 20 Trial Tr. 129.) Corporal Armstrong asked Defendant Trooper Burnett to do a more thorough search of Plaintiff. (Jan. 20 Trial Tr. 130.)

Trooper Burnett took Plaintiff to a bathroom where he conducted a strip search and body cavity search of Plaintiff. (Jan. 19 Trial Tr. 49.) Plaintiff believed that the bathroom was located in the Parx Casino employee area. (*Id*. at 63.) Corporal Armstrong and Trooper Burnett testified that the bathroom was located in the PSP office, and is accessed only by PSP and Gaming Enforcement employees. (Jan. 20 Trial Tr. 130-31.) Plaintiff testified that the bathroom had one toilet and one sink. (Jan. 19 Trial Tr. 63.) There are no other bathrooms in the back offices of the casino that are similar to the bathroom in the PSP office. (Jan. 20 Trial Tr. 99.)

Once in the bathroom, Trooper Burnett told Plaintiff that "if [he] f[uck]ing moved, that [his] head was going through the wall." (Jan. 19 Trial Tr. 49.) Trooper Burnett then told Plaintiff to remove his clothes. (*Id*.) Security Officer Baxter stood in the doorway and held the door halfway open. (*Id*. at 50.) Plaintiff testified that while he was naked, he could see male and female Parx employees walking back and forth, and looking into the bathroom at him. (*Id*.) While he was naked, Trooper Burnett told Plaintiff to bend over. (*Id*.) Trooper Burnett then separated Plaintiff's butt cheeks. (*Id*. at 50-51.) Plaintiff's anal cavity was not probed digitally or with any kind of instrument. (*Id*. at 65.) After Trooper Burnett completed the search, Plaintiff was permitted to put his clothes back on. (*Id*. at 51.) Nothing was found on Plaintiff during the search. (Jan. 20 Trial Tr. 97.)

Plaintiff was taken back to the PSP offices, where he remained for approximately two

hours before being released.  (*Id*. at 51-52.)  He had not been charged with any crimes when he

left the casino.  (*Id*. at 52.)  Plaintiff received a complaint in the mail approximately one month

later, charging him with violations of the Gaming Act and theft by deception.  (*Id*.)  Plaintiff, on

the advice of counsel, entered and completed the Accelerated Rehabilitative Disposition

("ARD") program.  This resulted in the charges being expunged.  (Jan. 20 Trial Tr. 67-68.)  As a

result of the incident, Plaintiff suffered from depression.  He received treatment from

psychologist, Dr. Paul DiKun, for the depression.  (*Id*. at 52.)  Plaintiff visited Dr. DiKun once a

week for approximately six months.  (*Id*.)

     **B.**    **Procedural History**

     Plaintiff filed a Second Amended Complaint on September 14, 2012, asserting various

claims under Section 1983 and state law.  (Sec. Am. Compl., ECF No. 21.)[3]  On October 2,

2014, we granted the Commonwealth Defendants' motion to dismiss, and granted in part and

denied in part the Parx Defendants' motion to dismiss.  On November 10, 2015, we granted

Defendants' motions for summary judgment.  (ECF Nos. 67-68.)  The only claim remaining after

summary judgment was the illegal search claim under Section 1983 and the claim for punitive

damages, both asserted against Trooper Burnett.  (*See id*.)

     After a three-day trial, which began on January 19, 2016, the jury returned a verdict in

favor of Plaintiff and awarded compensatory damages in the amount of $125,000.  After the

verdict on compensatory damages, the parties presented evidence on the claim for punitive

damages, which had been bifurcated.  The jury determined that Plaintiff was not entitled to

---

[3] Specifically, Plaintiff asserted claims for false arrest, false imprisonment, illegal search, malicious prosecution, and malicious abuse of process under Section 1983.  (Sec. Am. Compl.) Plaintiff asserted state law claims for assault and battery, illegal search, malicious prosecution, false arrest, and false imprisonment.  (*Id*.)  He also sought punitive damages.  (*Id*.)

punitive damages.  At the close of all of the evidence, Defendant moved for judgment as a matter of law.  (Jan. 20 Trial Tr. 145-49.)

On February 12, 2016, Defendant filed this Post-Trial Motion under Rules 50(b) and 59. (Def.'s Mot., ECF No. 89.)  Defendant was granted an extension of time to file a memorandum in support of the motion.  On March 25, 2016, Defendant filed his Memorandum in support of the Post-Trial Motion.  (Def.'s Mem., ECF No. 98.)  On April 12, 2016, Plaintiff filed a Response in opposition to the Motion.  (Pl.'s Resp., ECF No. 100.)  On April 19, 2016, Defendant filed a Reply.  (Def.'s Reply, ECF No. 101.)

## II.    MOTION FOR JUDGMENT AS MATER OR LAW

Defendant seeks judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.  Defendant contends that Trooper Burnett's conduct in performing a strip search and a visual body cavity search is protected by qualified immunity.

### A.    Legal Standard under Rule 50

Federal Rule of Civil Procedure 50 permits a court to enter judgment as a matter of law where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue."  Fed. R. Civ. P. 50(a)(1).  "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record."  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).  All reasonable inferences must be drawn in favor of the nonmoving party, and the court is not permitted to make credibility determinations or weigh the evidence.  *Id.*  "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."  *Walter v. Holiday Inns, Inc*., 985 F.2d 1232, 1238 (3d Cir. 1993) (citation and internal quotation marks omitted).

### B.  Qualified Immunity

Defendant's request for judgment as a matter of law under Rule 50 is based on the doctrine of qualified immunity.  Defendant first argues that strip searches and body cavity searches are constitutional as incident to a lawful arrest, as was the case here.  Defendant also argues that even construing the facts in the light most favorable to Plaintiff, Defendant's conduct is protected because it was not clearly established that a strip search and body cavity search incident to arrest were unconstitutional.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably."  *Id*.

An analysis of whether qualified immunity protects Defendant's conduct proceeds in two steps.  The Court must determine "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions."  *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (citation omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  However, "there does not have to be 'precise factual correspondence' between the case at issue and a previous case in order for a right to be 'clearly established[.]'"  *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004).  Rather, "[t]o be clearly established, a right must be

6

sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citation and internal quotation marks omitted). Although the analysis does not "require a case directly on point," there must be "existing precedent [that] placed the statutory or constitutional question beyond debate." *Id.* (citation and internal quotation marks omitted).

We must view the facts in the light most favorable to Plaintiff.[4] Under this standard, we must accept the fact that Defendant did perform a strip search and body cavity search on Plaintiff and this was done after he was arrested for what were later charged as misdemeanor crimes. These facts having been established, Defendant clearly is not entitled to the protection of qualified immunity. First, the strip search and body cavity search did violate Plaintiff's Fourth Amendment rights. Second, the right to be free from strip searches and body cavity searches incident to arrest for a misdemeanor crime was clearly established at the time of the search.

1.   *Strip Search and Body Cavity Search Violated Plaintiff's Fourth Amendment Rights*

The Fourth Amendment protects individuals from unreasonable searches of their persons, homes, and effects. *See* U.S. Const. amend. IV. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court set out the general test of reasonableness applicable to Fourth Amendment searches. The Court stated that

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

---

[4] The testimony as to what happened when Defendant took Plaintiff to the bathroom for a more thorough search was disputed. Obviously, the jury believed Plaintiff's version of the events.

*Id*. at 559.  Although the Fourth Amendment generally requires that a warrant be issued prior to a search, the Supreme Court has recognized a few exceptions to this warrant requirement.  One such exception is a search incident to arrest.  *See Chimel v. California*, 395 U.S. 752, 762-63 (1969).  Defendant here contends that because his arrest of Plaintiff was based on probable cause, the strip search and body cavity search were constitutional as searches incident to a lawful arrest.

In *United States v. Robinson*, the Supreme Court considered the search-incident-to-arrest exception as it applied to searches of an arrestee's person.  414 U.S. 218 (1973).  Robinson was arrested for driving with a revoked license.  *Id*. at 220-21.  The police officers conducted a pat-down search and felt an object in Robinson's coat pocket, which turned out to be a cigarette package.  *Id*. at 221-23. The arresting officer determined that the cigarette package contained something other than cigarettes, opened the package, and found heroin.  *Id*. at 223.  The Court held that the warrantless search of the cigarette package was constitutional, explaining that:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.  It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest *a full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*Id*. at 235 (emphasis added).

Defendant invites us to construe the "full search of the person" language from *Robinson* as a blanket rule that any search incident to arrest is lawful and reasonable, despite the scope of the search.  The Supreme Court did not intend such an expansive reading of its holding in *Robinson*.  *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1269 (7th Cir. 1983) ("The [Robinson] Court did not suggest that a person validly arrested may be subject to *any* search the

8

arresting officer feels is necessary.").  Under Defendant's view, there would be no limits to a police officer's authority in conducting the search, and full searches of body cavities and body fluids would be permissible, even when the arresting crime is a misdemeanor.  This is simply not the case.  *See Schmerber v. California*, 384 U.S. 757, 769 (1966) (holding that the Fourth Amendment does not permit searches incident to arrest which involve "intrusions beyond the body's surface" such as drawing blood).  In 2009, the Supreme Court indicated that there were boundaries to a search incident to arrest.  In *Arizona v. Gant*, the Court emphasized that "the scope of a search incident to arrest" needs to be "commensurate with its purposes," which include "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy.  556 U.S. 332, 339 (2009).  Even though Plaintiff may have been lawfully arrested, "the reasonableness of any search incident thereto still depended on the manner in which it was conducted."  *Wilson v. Aquino*, 233 F. App'x 73, 77 (2d Cir. 2007).

Contrary to Defendant's position, the law does not grant police officers the broad authority to conduct strip searches and body cavity searches incident to arrest.  *See Swain v. Spinney*, 117 F.3d 1, 5-9 (1st Cir. 1997) (holding that police officers may not conduct a strip search of an arrestee incident to the arrest); *Evans v. Stephens*, 407 F.3d 1272, 1279 (11th Cir. 2005) (en banc) (holding post-arrest strip searches violated Fourth Amendment); *Jiminex v. Wood Cty, Texas*, 621 F.3d 372, 379 (5th Cir. 2010) (strip search after arrest for minor offense held unconstitutional); *Jones v. Edwards*, 770 F.2d 739, 741-42 (8th Cir. 1985) (finding strip search of individual arrested for minor offense unconstitutional); *Roberts v. Rhode Island*, 239 F.3d 107, 112 (1st Cir. 2001) (holding strip search of arrestee for minor offense was unconstitutional).

Defendant also contends that his search of Plaintiff was constitutional because he had a

9

reasonable suspicion to believe that Plaintiff was concealing contraband.  During the jury charge, we instructed that Defendant's search must have been justified by probable cause to believe that Plaintiff was concealing weapons or contraband.  Defendant contends that the lesser standard of reasonable suspicion is the applicable standard, and not probable cause.  We will hereinafter address Defendant's argument with regard to the applicable standard.  However, even assuming that the lesser standard applies, the facts here do not support a finding that Defendant had a reasonable suspicion that Plaintiff was concealing weapons or contraband.  Plaintiff had been patted down and no weapons were discovered.  The police officers conceded that they did not believe that Plaintiff was armed and dangerous.  Rather, Defendant contends that because Plaintiff had moved the card-counting device from his pant pocket to his sleeve, this conduct created a reasonable suspicion that he was concealing *another* card-counting device, perhaps in between his butt cheeks.  Plaintiff's conduct of moving the device does not rise to the level of reasonable suspicion, let alone probable cause.  Defendant's suspicion that Plaintiff may have been hiding another card-counting device in his body cavity is ridiculous.  Plaintiff's Fourth Amendment right was violated here.  We now address whether that right was clearly established.

### 2.   *The Fourth Amendment Right Was Clearly Established*

Defendant argues that at the time the search took place, it was not clearly established that conducting a strip search and body cavity search incident to lawful arrest was unconstitutional. He contends that the "'[n]o Supreme Court case discusses the constitutionality of strip searches incident to arrest, which appear to fall between the full searches considered by *Robinson* and the intrusions beyond the body's surface considered by *Schmerber*.'"  (Def.'s Mem. 9 (quoting *Allison v. GEO Grp., Inc*., 611 F. Supp. 2d 433, 442 (E.D. Pa. 2009)).  According to Defendant, this lack of precedent failed to put him on notice that a strip search and body cavity search, with

or without reasonable suspicion, was unconstitutional.

The fact that neither the Supreme Court nor the Third Circuit has specifically stated that strip searches and body cavity searches incident to arrest for misdemeanor crimes are unconstitutional is not determinative.  "[I]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law."  *Brosseau v. Haugen*, 543 U.S. 194, 198-200 (2004); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("The easiest cases don't even arise." (citation and internal quotation marks omitted)).  The controlling question is whether a reasonable police officer would have understood at the time of the search that his conduct violated the plaintiff's constitutional rights.  The absence of cases specifically addressing a police officer's strip search and body cavity search of an individual arrested for a misdemeanor and not detained in a jail or prison setting does not mean that the right was not clearly established.[5]  Any reasonable police officer would have known that a strip search and body cavity search of Plaintiff under these circumstances was unconstitutional.  *See Aquino*, 233 F. App'x at 77 (denying qualified immunity to officers for conducting a strip search incident to arrest because "[i]t has long been clearly established that strip searches require particular justification").

---

[5] In *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012), the Supreme Court held that a jailhouse policy of conducting strip searches and body cavity searches of all individuals detained at the prison was constitutional.  *Id*. at 1519-23.  The policy authorized the searches on any arrestee detained, regardless of the type of crime they committed.  *Id*.  The Court determined that the indiscriminate searches were justified by the need to maintain institutional security.  *Id*. at 1517.  *Florence* deals with jail and prison policies permitting searches in institutional settings.  The searches in these settings are justified on different grounds than searches incident to arrest, and are therefore not applicable.  *See Bell v. Wolfish*, 441 U.S. at 559 (upholding policy permitting strip and visual body cavity searches of pretrial detainees because "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence"); *Stanley v. Henson*, 337 F.3d 961, 966 (7th Cir. 2003) ("Maintaining institutional security as well as the safety of jail officers and inmates has been recognized as a significant interest and valid justification for strip searches.").

In support of his position that he is entitled to qualified immunity, Defendant cites two cases, neither of which applies here.  In *Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013), and *Jacobson v. McCormick*, 763 F.3d 914 (8th Cir. 2014), the courts determined that the police officers were entitled to qualified immunity.  In *Jacobson*, the plaintiff was arrested for driving under the influence of alcohol.  During his arrest, he admitted to the officers that he had smoked marijuana.  763 F.3d at 915.  The officers conducted a strip search of the plaintiff pursuant to county prison policy that permits strip searches if there is a reasonable basis to conclude that the detainee is concealing contraband.  *Id*. at 915-16.  After the search, the plaintiff was placed in the booking area populated with other detainees.  The Court held that the officers were entitled to qualified immunity.  *Id*. at 918-19.  *Jacobson* is distinguishable for two reasons. First, Plaintiff here was not detained in a booking area populated with other detainees, and therefore there was not a heightened need to maintain institutional security.  Second, the search in *Jacobson* was conducted pursuant to a policy that permitted strip searches under certain circumstances that were present in that case.  The Pennsylvania State Police regulation which governed Defendant's conduct in this case only permitted strip searches for misdemeanor crimes when there was probable cause to believe that the individual was concealing a weapon or a controlled substance.  In this case, no one believed that Plaintiff was concealing a weapon or controlled substances.

In *Gonzalez*, the plaintiff was subjected to a suspicionless body cavity search after being arrested for felony drug possession. 728 F.3d at 153.  The Court held that qualified immunity applied because "[a]t the time of the search, [the court] had never held that the Fourth Amendment is violated by a suspicionless search (strip search or visual body cavity search) of a person arrested for felony drug possession." *Id*. at 161.  The Court's reasoning was based, in

part, on the distinction between felony crimes and misdemeanor crimes.  The Court stated that, "[a]lthough we have repeatedly held that the police may not conduct a suspicionless strip or body search of a person arrested for a misdemeanor, reasonable officers could disagree as to whether that rule applied to those arrested for felony drug crimes."  *Id*.  *Gonzalez* does not help Defendant.  Plaintiff was arrested for a misdemeanor, not a felony drug crime.  Plaintiff's right to be free from strip and body cavity searches after having been arrested for a misdemeanor crime was clearly established at the time of the search.  Defendant is not entitled to qualified immunity.

## III.    MOTION FOR NEW TRIAL

In the alternative, Defendant seeks a new trial under Rule 59(a).  Defendant contends that a new trial is warranted because:  (1) the Court's jury instruction on unreasonable search was misleading, confusing, and contained legal inaccuracies; (2) the Court abused its discretion in permitting Gerald Stanshine, Esquire, to testify about Plaintiff's acceptance into the ARD program; and (3) the award for compensatory damages was excessive and against the weight of the evidence.  In the event the Court denies Defendant's request for a new trial, Defendant seeks a reduction in the compensatory damages award.

### A.    Legal Standard under Rule 59

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Rule 59(a) does not specify the basis on which a court may grant a new trial, but leaves the decision to the discretion of the district court.  *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).  Courts have granted new trials when there have been prejudicial errors of

law or when the verdict is against the weight of the evidence.  *See Maylie v. Nat'l R.R.*

*Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992)

(citations omitted).  When the motion involves an evidentiary ruling or point for charge, the trial

court has wide latitude in deciding the motion.  *See Klein v. Hollings*, 992 F.2d 1285, 1289-90

(3d Cir. 1993); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986).  The

court must determine (1) whether an error was in fact made, and (2) whether the error was so

prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.  *Bhaya*

*v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989).

### B.      Jury Charge—Unreasonable Search

Defendant argues that the Court's jury instruction on unreasonable search was erroneous.

Specifically, he contends that the instruction was confusing and misleading, and that it instructed

on the incorrect standard for unreasonable search.  In considering claims of error with regard to

jury instructions, we must consider "whether the charge, taken as a whole and viewed in the light

of the evidence, fairly and adequately submits the issues in the case to the jury."  *United States v.*

*Tiller*, 302 F.3d 98, 104 n.3 (3d Cir. 2002) (citation omitted); *see also Savarese v. Agriss*, 883

F.2d 1194, 1202 (3d Cir. 1989) ("Jury instructions are considered as a whole to determine

whether they are misleading or inadequate.").  There is no error if "the challenged instructions

accurately state the law relating to the particular issue under scrutiny."  *Drames v. Sun River Inv.,*

*S.A.*, 820 F. Supp. 209, 215 (E.D. Pa. 1993), *aff'd,* 17 F.3d 1429 (3d Cir. 1994).

The Court charged the jury as follows with respect to the unreasonable search claim:

> The second element that the plaintiff must prove is that the defendant deprived
> him a federal constitutional right.  Here, the plaintiff alleges that the defendant
> violated his Fourth Amendment right under the Constitution.   The Fourth
> Amendment states that the right of people to be secure in their persons, houses,
> papers, and effects against unreasonable searches and seizures shall not be
> violated.  The Fourth Amendment serves to safeguard privacy and security against

arbitrary invasion by a governmental official.  You must determine, ladies and gentlemen, in this case whether the search that was conducted here of the plaintiff was reasonable under constitutional standards.

Now, ladies and gentlemen, the test to determine whether a search violates the Fourth Amendment is whether the search was reasonable under the circumstances.  You should take into consideration all of the facts and circumstances which were known or which should have been known by defendant when you are assessing his liability to the plaintiff.

Ladies and gentlemen, the question you must answer is whether in the face of such facts and circumstances, the defendant treated plaintiff unreasonably and violated his constitutional rights.  You should understand, ladies and gentlemen, that in order to conduct a strip search or a body cavity search, a police officer must have probable cause to believe that the individual is concealing weapons or contraband.  Ladies and gentlemen, probable cause means that there is a reasonable ground to suspect that a person is concealing weapons or contraband. Probable cause is more than bare suspicion, hunch, guess, or conjecture.

And, ladies and gentlemen, in determining whether the search in this case was reasonable under the Fourth Amendment, you must determine how intrusive the search was and weigh whether the evidence was substantial and serious enough to justify it.  You should understand that a strip search is more intrusive and a greater invasion of privacy than a pat down search.  A visual body cavity search is more intrusive than a strip search, and any physical touching during a strip or body cavity search is even more intrusive.  You should understand that a police officer must possess more evidence to justify a more intrusive search than would be sufficient to permit a less intrusive search.  You must also consider the nature of the invasion of the person's Fourth Amendment rights in determining whether the justification asserted by the defendant was reasonable for that search.

Ladies and gentlemen, for purposes of these instructions . . . contraband is defined as goods that are unlawful to possess.  For purposes of these instructions, you should understand that strip search means any removal or rearrangement of clothing which results in any exposure or observations of a portion of a person's body or of which that person has a reasonable expectation of privacy.  A body cavity search involves inspection of the anal or genital areas.

So, ladies and gentlemen, you have to decide based upon the evidence and testimony presented here whether the defendant violated the plaintiff's constitutional rights by unreasonably conducting a search of the plaintiff based upon the law as I've given it to you.

(Jan. 20 Trial Tr. 182-85.)

Defendant first contends that a portion of the instruction was misleading and had the

potential to confuse the jury.  Specifically, Defendant takes issue with the following language:
"the question you must answer is whether in the face of such facts and circumstances, the
defendant treated plaintiff unreasonably and violated his constitutional rights."  (*Id*.)  Defendant
argues that the correct standard for unreasonable search is not whether the defendant treated
Plaintiff unreasonably, but instead, whether the search was reasonable under constitutional
standards.  Defendant's argument fails to take into account the totality of the Court's charge on
unreasonable search.  The Court repeatedly advised the jury that the search must be measured
against constitutional standards and that the standard is based on reasonableness.  (*See id*. at 183
("You must determine, ladies and gentlemen, in this case whether the search that was conducted
here of the plaintiff was reasonable under constitutional standards."); *id*. ("Now, ladies and
gentlemen, the test to determine whether a search violates the Fourth Amendment is whether the
search was reasonable under the circumstances."); *id.* at 184 ("And, ladies and gentlemen, in
determining whether the search in this case was reasonable under the Fourth Amendment . . .
.").)  The Court's charge on unreasonable search, taken as a whole, accurately stated the law
under the Fourth Amendment and was not misleading.

Defendant also argues that the jury charge was erroneous because it instructed the jury
that probable cause was needed to conduct the strip or body cavity search, instead of instructing
on the lesser standard—reasonable suspicion.  Defendant contends that the majority of Circuit
Courts, including the Third Circuit, have determined that the test for evaluating whether strip
searches and visual body cavity searches violate the Fourth Amendment is whether they were
justified by a reasonable suspicion that the arrestee is concealing contraband or weapons.
Contrary to Defendant's assertion, the Third Circuit has never held that a search incident to arrest
for a misdemeanor crime, when the arrestee will be released and not placed in an institutional

setting, permits strip searches and body cavity searches based on a reasonable suspicion.

Moreover, this is not the position taken by a majority of the circuit courts.

In *Doe v. Groody*, the Third Circuit addressed the standard applicable to a "non-protective search" which was a search, the purpose of which was other than to secure weapons for the safety of the officers.  361 F.3d 232, 238 (3d Cir. 2004).  The Court held that "[a] non-protective search must normally be supported by probable cause, and with certain exceptions, must be authorized by a warrant."  *Id*.  In *Groody*, police officers conducted a strip search of a mother and ten-year-old daughter in the course of executing a search warrant for narcotics at their home.  *Id*. at 235; *see also id*. at 238 ("The nature of the intrusion alleged is significant.").

The Court pointed out that the search could not be considered a protective sweep or "frisk," which is justified on less than probable cause, because those types of searches are limited to searches for weapons, and the officers admitted that they did not believe that the plaintiffs were armed and dangerous.  (*Id*. at 238.)  The Court also determined that the face of the search warrant did not grant authority to search the plaintiffs in the manner that they were searched.

Although *Groody* did not deal specifically with searches incident to lawful arrest, the Third Circuit's strong statement of a standard associated with non-protective searches is significant.  The search at issue in this case was not conducted for the purpose of securing weapons.  Prior to the search by Trooper Burnett, Corporal Armstrong patted Plaintiff down and found no weapons.  In addition, the officers admitted that they did not believe Plaintiff was carrying a weapon.  The search was a non-protective strip search and body-cavity search, which required probable cause.  Even the Pennsylvania State Police Regulations, which govern police officer conduct at issue in this case, specifically forbid police officers from conducting strip searches for misdemeanor crimes unless there is probable cause to believe that the individual is

concealing a weapon or a controlled substance.  (Jan. 21 Trial Tr. 16-17.)  The same regulations require a warrant to conduct a body cavity search.  (*Id*. at 21.)

The cases relied on by Defendant do not support his position that reasonable suspicion is the standard applicable to the search in this case. In *Keating v. Pittston City*, No. 14-1840, 2016 U.S. App. LEXIS 4485 (3d Cir. Mar. 10, 2016), the Third Circuit affirmed the lower court's grant of summary judgment to defendant police officers with respect to an unreasonable strip searches and visual body cavity search claim.  *Id*.  Plaintiff was a parolee, and therefore "had diminished privacy rights by virtue of his prior consent to warrantless personal searches by parole agents based on reasonable suspicion."  *Id*. at 18.  The court held that the facts established a reasonable suspicion to conduct the strip search and body cavity search.  *Id*.  Defendant relies on *Keating* in arguing that the reasonable suspicion standard is applicable to the search of Plaintiff.  Defendant fails to mention that the reasonable suspicion test was used by the Court in *Keating* pursuant to a Pennsylvania statute related to parolees.  *Id*.  Specifically, 42 Pa. Cons. Stat. Ann. § 9912(d)(1) authorizes parole agents to conduct searches of parolees based on a reasonable suspicion that the parolee possessed "contraband or other evidence of violations of the conditions of supervision."  *Id*.  Plaintiff had no prior criminal record and was not a parolee at the time the incident occurred.  *Keating* simply does not apply here.

Defendant's reliance on *United States v. Clemons*, No. 08-28, 2010 U.S. Dist. LEXIS 13551 (W.D. Pa. Feb. 17, 2010), aff'd 2012 U.S. App. LEXIS 20164 (3d Cir. 2012), is similarly misplaced.  In *Clemons*, a district court in the Western District of Pennsylvania denied a defendant's motion to suppress evidence discovered during a strip search of the defendant at the police station.  At the time the defendant was arrested, he had had three outstanding warrants for narcotics sales.  *Id*. at 3.  The police officers decided to conduct a strip search based on

information from a confidential informant that the defendant concealed drugs in his underwear.
*Id*. at 5.  Defendant relies on *Clemons* because the court used a reasonable suspicion standard in
concluding that the police officers' strip search was reasonable.   *Clemons* is easily distinguished.
In *Clemons*, the defendant was arrested pursuant to three warrants for felony drug distribution
crimes.  The crimes involved controlled buys by a confidential informant.  Moreover, the
defendant was well known to the police as a drug dealer and he was known to hide contraband in
his underwear.  Here, Plaintiff was arrested for a misdemeanor and the officers had no prior
knowledge of him and no basis upon which to believe that he was concealing weapons or drugs.
Interestingly, the court in *Clemons* observed that "[p]olice do not have indiscriminate authority
to conduct strip and visual body cavity searches."  *Id*. at 10.  Rather, "[t]he test to determine if a
strip search violates the Fourth Amendment is whether the strip search is reasonable under the
circumstances." *Id*.

   In any event, we note that in instructing the jury with regard to strip searches and body
cavity searches, we defined probable cause as follows:

> You should understand, ladies and gentlemen, that in order to conduct a strip
> search or body cavity search, a police officer must have probable cause to believe
> that the individual is concealing weapons or contraband.  Ladies and gentlemen,
> probable cause means that there is a *reasonable ground to suspect* that a person is
> concealing weapons or contraband.   Probable cause is more than a mere
> suspicion, hunch, guess or conjecture.

(Jan 20 Trial Tr. 183 (emphasis added).)  Viewing the jury charge as a whole, Plaintiff's
argument that the Court's charge on the standard for conducting strip searches and body cavity
searches was erroneous is without merit.

   Defendant also argues that the charge on unreasonable search was erroneous because it
incorporated subjective elements with regard to Trooper Burnett's knowledge prior to the search,
when the standard should have been an objective one.  Specifically, Defendant takes issue with

the Court's instruction that the jury should "take into consideration all of the facts and

circumstances which were known or which should have been known by defendant" when

assessing whether the search of Plaintiff was reasonable.  (Jan. 20 Trial Tr. 183.)  When counsel

for Defendant objected to this instruction at trial, counsel explained that the phrase "should have

been known" is "non-objective" and that "[i]t's not what he should have known" that matters for

purposes of the charge, but instead "what he knew."  (Jan. 20 Trial Tr. 189.)  Contrary to

Defendant's assertion, there is nothing erroneous about the Court's instruction as to the

knowledge element of the unreasonable search standard.  An objective inquiry takes into

consideration what information should have been known to the reasonable person at the relevant

time.  *See Lewis v. Smith*, No. 08-3800, 2010 U.S. App. LEXIS 27606, at *17 (3d Cir. July 28,

2010) ("Using an objective test, I must determine whether the plaintiff knew, or should have

known, the legal or evidentiary deficiencies of his claim." (citing *Brown v. Chambersburg*, 903

F.2d 274, 277 (3d Cir. 1990)); *Muhammad v. Ct. of Comm. Pls.*, 483 F. App'x 759, 762 (3d Cir.

2012) ("The determination of the time at which a claim accrues is an *objective* inquiry; the

relevant question is what a reasonable person *should have known*." (emphasis added)).

      Finally, Defendant contends that the Court's instruction on body cavity searches was

erroneous.  Specifically, at the trial, counsel for Defendant stated:

> We would additionally object to the distinction made by the Court between a
> visual body cavity search and a strip search and any physical touching during a
> strip or body cavity search.  There's no basis in law for that distinction.  Those are
> all held to the same standard as distinct from body cavity search.
>
> We would also object to the use of body cavity search at all in the instruction as
> unfairly prejudicial.  There was no evidence here that rises to the level of body
> cavity search, which the Supreme Court has held to require an intrusion upon the
> body that went beyond the body surface.

(Jan. 20 Trial Tr. 189-90.)  Defendant contends that the law does not distinguish between strip

searches and body cavity searches, and therefore, the court's instruction that a "visual body cavity search is more intrusive than a strip search" was given in error.  Defendant is simply wrong.  "In each case [the test of reasonableness] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted . . . ."  *Bell*, 441 U.S. at 559 (citations omitted).  In *Florence*, the Third Circuit observed the distinction between strip searches and visual body cavity searches:

> We have previously recognized that a strip search constitutes a significant intrusion on an individual's privacy.  Here, the strip search policies require the arrestees to undress completely and submit to a visual observation of their naked bodies before taking a supervised shower.  We do not minimize the extreme intrusion on privacy associated with a strip search by law enforcement officers; however, the searches at issue here are less intrusive than the visual body-cavity searches considered by the Supreme Court in *Bell*.  In fact, they are closer to the strip searches upheld by the lower court in *Bell*.

621 F.3d at 307 (citations omitted); *see also Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) ("Courts examining the constitutionality of physically intrusive searches have distinguished between strip searches, visual body cavity searches, and manual body cavity searches." (quoting *Leverette v. Bell*, 247 F.3d 160, 166 n.3 (4th Cir. 2001))).

Defendant's objection to the Court's inclusion of body cavity searches in its instructions to the jury is also rejected.  Plaintiff testified that Trooper Burnett asked him to strip naked, and then Trooper Burnett physically spread Plaintiff's butt cheeks.  (Jan. 19 Trial Tr. 50.)  There was ample evidence that at least a visual body cavity search took place.  The Court's instruction clearly instructed the jury that "[a] visual body cavity search is more intrusive than a strip search, and [that] any physical touching during a strip or body cavity search is even more intrusive." (Jan 20 Trial Tr. 184.)  This instruction was proper in light of the evidence presented at trial.

21

Accordingly, Defendant's request for a new trial on grounds that the jury instruction on unreasonable search was erroneous will be denied.

### C.     Testimony of Gerald Stanshine

Next, Defendant argues that the Court abused its discretion when it permitted Gerald Stanshine, Esquire, to testify.[6]  Mr. Stanshine represented Plaintiff in his criminal matter defending on the charge of violating Title 4 of the Gaming Act and the charge of theft by deception.  Based in part on the advice of Mr. Stanshine, Plaintiff entered the ARD program.  A brief description of the circumstances surrounding the Court's decision to permit Gerald Stanshine's testimony will be helpful in addressing the legal arguments raised by the parties.

Prior to trial, the Court granted Plaintiff's motion *in limine* to preclude evidence about his acceptance into, and completion of ARD.  (ECF No. 79.)  The order made clear, however, that in the event that Plaintiff argued that his possession of the card-counting device was not a crime, then Defendant would be permitted to question him regarding his entrance into, and participation in the ARD program.  (*Id*.)  During trial, Plaintiff testified that he didn't believe that carrying a card-counting devise was a crime.  (Jan. 19 Trial Tr. 47.)  Based on this testimony, the Court permitted Defendant to question Plaintiff about his participation in ARD.  (*Id*. at 66-67.)  On re-direct, counsel for Plaintiff questioned Plaintiff about his understanding of ARD, and why he decided to agree to enter the program.  The Court followed up with questions about ARD directed to Plaintiff.  (*Id*. at 74.)  Plaintiff testified that ARD was not probation, and that he was not placed "on ARD probation."  (*Id*.)

Plaintiff's counsel sought to offer the testimony of Gerald Stanshine to explain ARD, including its ramifications, and the reasons why Plaintiff accepted entry into the ARD program.

---

[6] Gerald Stanshine is the brother of Martin Stanshine, Esquire, who represents Plaintiff in the instant civil action against Officer Burnett.  (Jan. 20 Trial Tr. 38.)

(*Id*. at 75.)  Defense counsel objected to the testimony on the basis of relevance.  (*Id*. at 75-76.)

Defense counsel also objected on the basis that Mr. Stanshine would not present testimony any

more helpful than what Plaintiff had already presented.  (Jan 20 Trial Tr. 7-8.)  The Court

overruled the objections of defense counsel and permitted Mr. Stanshine to testify.  (*Id*. at 30.)

The Court noted that because Defendant was permitted to present evidence about the ARD

program, it was appropriate for Plaintiff to offer testimony about that program so that the jury

could understand the consequences of it.  (*Id*. at 30.)  Mr. Stanshine testified about the ARD

program generally, and that entrance into the program is not an admission of guilt.  (*Id*. at 40-

41.)  He also testified that he advised Plaintiff to accept the ARD program because, although he

didn't believe the charges would be sustained, he could not guarantee that result, and the

mandatory minimum fine for the offense would have been $75,000.  (*Id*. at 41-42.)

      Defendant raises multiple arguments as to why Mr. Stanshine's testimony is grounds for

a new trial.  First, Defendant renews his objection that Mr. Stanshine's testimony was not

relevant under Rule 401 of the Federal Rules of Evidence, and that the testimony was

cumulative.  Defendant also raises new arguments that were not raised during the trial.

Specifically, Defendant contends that Mr. Stanshine's testimony constituted expert testimony,

and that it improperly invaded the Court's province of informing jurors about the law.

      The Third Circuit has cautioned that a new trial may only be granted when "substantial

errors occurred in admission or rejection of evidence."  *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d

655, 676 (3d Cir. 2002) (citation omitted); *see also* Fed. R. Civ. P. 61 ("Unless justice requires

otherwise, no error in admitting . . . evidence . . . is ground for granting a new trial.").   If errors

in evidentiary rulings are harmless, however, a new trial is not warranted.  *McQueeney v.*

*Wilmington Trust Co*., 779 F.2d 916, 917 (3d Cir. 1985).  Errors are "harmless only if it is highly

probable that the errors did not affect the outcome of the case." *Id.*  Special deference is afforded

to the district court when it is asked to order a new trial based on objections to discretionary

decisions made at trial, such as the court's evidentiary rulings.  *Klein v. Hollings*, 992 F.2d 1285,

1289-90 (3d Cir. 1993).

      With regard to Defendant's objections that were not raised during the trial, Defendant has

waived these objections.  Federal Rule of Evidence 103(a)(1)(B) states that a party claiming an

error in a ruling to admit evidence must "state[] the specific ground" of the objection, "unless it

was apparent from the context."  Fed. R. Evid. 103(a)(1)(B).  "The purpose of this rule is to

inform the court of possible errors so that there is a timely opportunity for them to be corrected."

*Grace v. Mauser-Werke Gmbh*, 700 F. Supp. 1383, 1388 (E.D. Pa. 1988).  The only specific

objections that were raised prior to this post-trial motion was that Mr. Stanshine's testimony was

not relevant to the issues, and that it was redundant because Plaintiff had already testified about

the ARD program.  Defendant did not once mention its concern that Mr. Stanshine's testimony

was improper expert testimony or that it invaded the Court's role in providing the law to the jury.

These latter two objections are therefore waived.  *See Holber v. Suffolk Constr. Co. (In re Red

Rock Servs. Co., LLC)*, No. 13-784, 2014 U.S. Dist. LEXIS 169257, at *53-54 (E.D. Pa. Dec. 8,

2014); *see also Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) ("[I]t is clear that a party who

fails to object to errors at trial waives the right to complain about them following trial." (citation

omitted)).

      Defendant contends that even if he failed to preserve the claims of error by not raising

them at trial, the Court "'may take notice of a plain error affecting a substantial right, even if the

claim or error was not properly preserved.'"  (Def.'s Reply 9 (quoting Fed. R. Evid. 103(e))); *see

also United States v. Iglesias*, 535 F.3d 150, 158 (3d Cir. 2008) (noting that "[t]here must be an

24

error that is plain and that affect[s] substantial rights." (citation and internal quotation marks omitted)).  "An error is a deviation from a legal rule and it is plain if it is clear or obvious."  *Id.* (citation and internal quotation marks omitted).  In addition, "an error affects substantial rights when it is prejudicial, *i.e.*, it affected the outcome of the district court proceedings."  *Id.* (citation and internal quotation marks omitted).  Defendant has failed to show how Mr. Stanshine's testimony was prejudicial to the proceedings.  The jury had heard briefly from Plaintiff with regard to the ARD program.  The testimony of Mr. Stanshine, which merely provided additional details about the program, and that he recommended that Plaintiff take advantage of it, was not prejudicial, and did not affect a substantial right.

Defendant's renewed objections as to the relevance and cumulative nature of Mr. Stanshine's testimony are also not grounds for a new trial.  Defendant chose to raise the issue of Plaintiff's acceptance of ARD.  He did not have to do so.  Once he did, however, it was perfectly appropriate for Plaintiff to offer testimony about what that program entailed so that the jury was not left confused.  The testimony was relevant to the issues raised by Defendant.  In addition, Defendant's minimal questioning of Plaintiff about his participation in ARD was aimed at convincing the jury that Plaintiff admitted he was guilty of the crimes.  It would have been prejudicial to Plaintiff to not allow him the opportunity to offer additional evidence about the parameters and consequences of ARD so that the jury had a better understanding of it.

### D.    Compensatory Damages

Finally, Defendant argues that the jury's award of $125,000 in compensatory damages was excessive and against the weight of the evidence.  He seeks a new trial on the issue of damages, or in the alternative, for the Court to reduce the damage award.

In support of his request for a new trial on damages, Defendant contends that Plaintiff

failed to offer sufficient testimony in support of his claim for emotional damages.  Specifically, Defendant asserts that compensatory awards for emotional damages must be based on something more than Plaintiff's own self-serving testimony.  Defendant points to the fact that Plaintiff testified about his depression and his treatment with a psychologist, but he failed to offer medical reports or expert testimony to support his claim for damages.  However, the law is clear that expert testimony is not required to establish a claim for emotional damages.  *Bolden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994); *see also Holt v. Pennsylvania*, No. 10-5511, 2015 U.S. Dist. LEXIS 109311, at *105 (E.D. Pa. Aug. 19, 2015) (observing that plaintiff's testimony, which was the sole evidence of emotional damages, was not fatal to his claim).  "Moreover, while the Third Circuit has yet to expressly rule on whether a plaintiff's own testimony is sufficient to support an award of emotional damages, the weight of authority holds that a plaintiff's own testimony alone is generally sufficient to support some award of emotional damages."  *Id*. at 105-06 (citation omitted) (citing cases). *Cf. Dee v. Borough of Dunmore*, 474 F. App'x 85, 88 (3d Cir. 2012) ("Plaintiff's testimony about his daily humiliation, ostracism, and emotional distress over a two-year period, as a consequence of the defendant's retaliation was sufficient to justify a compensatory damage award." (citation omitted)).  The fact that Plaintiff did not offer expert testimony is of no consequence.  Plaintiff testified that he was treated by a psychologist weekly for approximately six months for the depression that he suffered as a result of being subjected to the degrading and humiliating strip search and body cavity search by Trooper Burnett.  This was sufficient to support an award for emotional damages.  Defendant's request for a new trial on damages is therefore denied.

Defendant also requests that the Court reduce the award of compensatory damages, arguing that it is excessive in light of the evidence presented at trial.  "In general, the

determination of compensatory damages is within the province of the jury and is entitled to great deference." *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1204 (3d Cir. 1986) (citation omitted). However, the Court may in its discretion reduce the compensatory damages award if it believes it is excessive.  Under the circumstances, we will not reduce the compensatory damages award in this case.

**1V.     CONCLUSION**

For the foregoing reasons, Defendant William Burnett's Post-Trial Motion Pursuant to Rule 50(b) and Rule 59 for Judgment as a Matter of Law or, in the Alternative, for a New Trial, will be denied.

An appropriate Order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK,   J.**

27